**GREEN TREE FARM, INC., Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. WD 57193.**

Missouri Court of Appeals,
Western District.

· Feb. 1, 2000.

Clinton B. Roberts, Farmington, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana Barragan–Scott, Asst. Atty. Gen., Jefferson City, for respondent.

1. All statutory references are to RSMo 1994.

2. This program provides partial property tax relief to owners of land who obtain and main-

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Appellant Green Tree Farm, Inc. (Green Tree) appeals from a decision of the Administrative Hearing Commission (the AHC) finding it liable for yield tax in the amount of $12,900.00 on certain property owned by it. The AHC found that the property lost its forest cropland status once, with Green Tree's permission, a lumber company began harvesting trees on the property, and that under Section 254.160[1] Green Tree then became liable for a 6% yield tax, totaling $12,900.00, on the value of the trees cut. Green Tree appeals, arguing that the AHC erred because the Director of Revenue failed to prove it owned the land in question or that it was forest cropland, and failed to prove the value of the trees cut. Because we find that the AHC's decision was supported by competent and substantial evidence, we affirm.

## I. STATEMENT OF FACTS

Viewed in the light most favorable to the agency's decision, the record shows that John and Delores Lewis owned approximating 966.17 acres of land located in Ste. Genevieve County, Missouri. The land was certified as forest cropland under the Missouri Conservation Commission's (the Commission's) Forest Croplands Program[2] on December 9, 1985. On May 6, 1994, the Lewises sold the land to Clinton B. and Gloria J. Roberts. The Roberts sold the property to Green Tree Farm, Inc., of which they were the sole officers and shareholders, on June 17, 1994.

On that same day, Green Tree entered into a contract with Madison County Wood Products (MCWP) under which MCWP agreed to purchase timber it would cut from a specified area of Green Tree's

tain this classification. *See* **Sec. 254.070– .090.**

property and Green Tree agreed to sell the timber for $215,000.00. Under the contract, MCWP was permitted to cut timber between the period of August 1, 1994 and September 30, 1995, except that no cutting was permitted between November 1, 1994 and December 31, 1994. MCWP began harvesting timber on the property around August 15, 1994.

Green Tree failed to furnish the Missouri Department of Conservation (MDC) monthly statements indicating the quantity and species of the timber being harvested, as required by Section 254.160. MDC thus had no official notice that trees were being cut on the property. In September 1994, an MDC inspector happened to overhear a sawmiller state that he had received logs from the property. The inspector went to see the property and found that trees were in fact being cut. Later, the inspector learned from Mr. Roberts that Green Tree had already been paid the total contract price of $215,000.00 which MCWP had agreed to pay for the cutting rights it acquired for the period August 1994 to September 1995, and that approximately 10% of that timber had been cut by the time of his September inspection.

Because the cutting had not been conducted in compliance with Missouri's forestry laws, on December 19, 1994, the Commission issued a Certificate of Cancellation, canceling the property's forest cropland status. The Commission sent the certificate to the Roberts because the Roberts had not reported their recent sale of the property to their wholly owned company, Green Tree Farm, Inc.

The MDC then sued the Roberts and Green Tree to recover property tax benefits received by Green Tree during the period when the property was classified as forest cropland, penalties, and for a determination of yield tax liability of 6% of the stumpage value of the trees harvested. The Circuit Court of Ste. Genevieve County, Missouri, found Green Tree liable for the property taxes and penalty in the amount of $4,782.55 and a yield tax of

$12,900.00. However, because the Director of Revenue, and not the MDC, has the statutory jurisdiction to collect the yield tax and the Director was not a party, the circuit court could only order Green Tree to pay the property taxes and penalty in the amount of $4,782.55. Green Tree has since paid this amount and that payment is not contested here.

The Commission provided the Director of Revenue with all the requisite information to collect the yield tax and requested that it do so in accordance with the findings of the circuit court. On December 18, 1997, the Director of Revenue issued a final decision finding Green Tree liable for yield tax in the amount of $12,900.00, which was 6% of the harvest contract price of $215,000.00.

Green Tree appealed the Director's decision to the Administrative Hearing Commission (AHC). The AHC found for the Director, holding Green Tree liable for a yield tax of $12,900.00. This appeal followed.

## II. LEGAL ANALYSIS

Green Tree raises a number of related points on appeal. First, it argues that, since it had just bought the land from the Roberts, and had not signed up for the Forest Croplands Program, it was not a part of that program, and, thus, was not subject to the program's rules or reporting requirements. Second, it argues that, even were it in the program, it never received proper notice of the cancellation because notice was sent to the Roberts, not to Green Tree. Third, it argues that the AHC's yield tax determination was erroneous because the statute requires the tax to be based on the value of the timber harvested as shown in a "stump value report," and no such report existed or was used. Finally, it argues that the record simply does not support the AHC's determination that a yield tax was due on the entire value of the $215,000 timber contract, as the evidence showed that only 10% of the trees had been cut by the time

the land was removed from the Forest Croplands Program. Thus, Green Tree argues, it could not be required to pay tax on more than 10% of the trees subject to the contract

**A. Green Tree was a Part of the Forest Croplands Program and Its Argument that it had Inadequate Notice is Without Merit.**

■ As noted above, it was the Lewises who initially received a Certificate of Classification as forest cropland from the Commission in 1985. They later sold that land to the Roberts on May 6, 1994, and the Roberts sold it to Green Tree on June 17, 1994. Contrary to Green Tree's arguments in this Court, however, the fact that the land was transferred to the Roberts and then to it did not affect the land's classification as forest cropland. Indeed, Section 254.060 quite specifically provides that "[t]he transfer of the ownership of any such forest croplands shall not affect any classification thereof as such." **Sec. 254.060.** *See also* **Sec. 254.200.1.** The only reasonable meaning of this language is that the transfer of ownership of the croplands from the Lewises to the Roberts to Green Tree did not affect the classification of the cropland "as such," that is, as forest cropland. We reject Green Tree's arguments that this statute is ambiguous and could leave open the question whether forest cropland status survives a transfer of ownership.

■ As noted, Green Tree also argues that, even if the land were in the program when owned by it, it never received proper notice of the cancellation of the land's status as forest cropland, since the notice went to the Roberts rather than to Green Tree. Thus, Green Tree argues, it must still be in the forest cropland program, and no yield tax can be assessed on it.

There are numerous problems with Green Tree's argument. First, assuming it were right that it is still in the program because it never received a proper notice of cancellation, that would not relieve it

from the duty to pay the yield tax. Sections 254.160 and 254.170 provide for the payment of a yield tax when timber on property which is in the forest cropland program is cut. Section 254.160 states in relevant part that:

If products of cuttings shall be sold or otherwise disposed of or transferred to the ownership of other persons it shall be subject to the yield tax provided in this chapter.

**Sec. 254.160.** Similarly, Section 254.170 states:

Whenever a cutting shall be made on lands so classified, except as otherwise provided in this chapter and in addition to the local tax, the material so cut shall be subject to a yield tax on the value as determined under section 254.160 and at the rate of six percentum of such value.

**Sec. 254.170.** Thus, under these statutes, the owner of property is required to pay the yield tax on the timber cut precisely because the land was in the program. No notice of cancellation is required in order to assess this tax.

Green Tree's argument may be based on the fact that Section 254.200 provides that the Commission shall notify the assessor, the county clerk and the owner if forest cropland status is cancelled due to improper use of the land, and that upon cancellation "such lands shall thereafter be taxed as other lands." **Sec. 254.200(2).** Similarly, Section 254.210 provides that, when the classification of land as forest cropland has been canceled for cause:

[t]he owner of such lands shall make reimbursement to the commission in a manner as the director of revenue shall prescribe for the grant which was paid by the commission to the county in lieu of taxes on this land while so classified as forest cropland, plus a penalty equivalent to ten percent interest thereon. Such reimbursement shall be in addition

to any yield tax which may have been paid or may be collected.

**Sec. 254.210.**

Thus, cancellation notice is required in order to seek reimbursement of tax credits and penalties. However, such tax credits and penalties are not at issue in this case. To the contrary, as noted earlier, the issue of taxes and penalties was tried by the parties in a separate action brought by the Commission against the Roberts and Green Tree in Ste. Genevieve County. The circuit court entered a judgment in that action on May 20, 1997, in which it found that due to cancellation of the property's forest cropland status for failure to comply with Missouri's State Forestry Law, Green Tree owed the Commission $4,782.55 in reimbursement of money the Commission had paid the county on behalf of Green Tree and its predecessors in lieu of taxes.

■ Green Tree never appealed the circuit court's determination, and paid the $4,782.55 judgment in full on December 1, 1997. It thereby waived any right it might otherwise have had to contest the adequacy of the notice of cancellation. And, as noted, the statutes did not require it to receive notice of cancellation in order for it to be found liable for the yield tax which is at issue in this case. Thus, its notice argument is without merit.

■ Second, Green Tree's sole shareholders and officers were the Roberts. The Roberts admitted they received actual notice of the cancellation, which was addressed to and received by them. Any notice to Green Tree would have been sent to their attention, and acted on by them in their capacity as officers of Green Tree,

and as Green Tree's registered agent for service of process.[3] Thus, Green Tree had actual notice of the cancellation. No prejudice occurred from the fact that the notice was in the name of the Roberts rather than in the name of Green Tree Farm, Inc. *See generally Robin Farms, Inc. v. Bartholome,* 989 S.W.2d 238, 255 (Mo.App. W.D.1999) (Recognizing, although not applying, the rule that "knowledge of an agent or officer of a corporation regarding matters within his or her scope of employment and authority and to which his or her employment extends is imputed to the corporate principal." The court reasoned that it could conclude that notice to one who was the president of the corporation could be attributed to the corporation); *Southwest Bank of Polk County v. Hughes,* 883 S.W.2d 518, 522 (Mo.App. S.D.1994) (a corporation obtains its knowledge only through its officers and agent, thus information as to matters within the scope of the authority of its officers and agents is imputed to it).[4]

Moreover, to the extent that Green Tree is arguing that it is not the owner of the land, its contention is belied by its admissions in this Court and in the court below that it bought the land from the Roberts on June 17, 1994, while the land was still in the Forest Cropland Program. It cannot now take an inconsistent position.

■ Finally, the trial court in the Ste. Genevieve County action, discussed above, specifically found that Green Tree was liable as owner because it permitted trees to be cut while the land was in the Forest Cropland Program, and Green Tree paid that judgment. The Director introduced that judgment below and argued that be-

**3.** Mr. Roberts is listed in the records of the Secretary of State as the registered agent for Green Tree Farm, Inc., charter number 00393971.

**4.** *See also Bosworth v. Sewell,* 918 S.W.2d 773, 778 (Mo. banc 1996) (recognizing principle); *Grant Selsor & Sons Lumber Co. v. Wood,* 872 S.W.2d 150, 154 (Mo.App. S.D. 1994) (defendant's telling plaintiff's employee

that the lumber received did not conform to specifications found sufficient to impute employee's knowledge to the corporation/employer.); *Paul's Rod & Bearing, Ltd. v. Kelly,* 847 S.W.2d 68, 71 (Mo.App. W.D.1991) ("Because [the Kellys] have actual notice of the option, and because they are both sole owners of and agents of the corporation, notice may be imputed to the corporation").

cause Green Tree had failed to appeal that judgment, it was bound by the factual findings and determinations therein which are essential to the judgment. The trial court did not rely on this collateral estoppel argument in finding for Green Tree, and because of our analysis above it is not essential to this appeal. Nonetheless, we note that, in order to determine whether to apply collateral estoppel, we consider:

(1) whether the issue decided in the proper adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. Most courts have added a fourth factor ... whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979) (citations omitted). Here, the issues of ownership, notice and cancellation were all essential to the prior judgment, were all tried in the prior case, and were tried by Green Tree, which had a full and fair opportunity to litigate them. Collateral estoppel would thus apply to these issues, and preclude Green Tree from relitigating them here.

## B. The Record Contains Adequate Evidentiary Support for the AHC's Determination of the Amount of Yield Tax Owed.

■ Green Tree also argues that the evidence did not support the AHC's determination that it owed yield tax on the entire amount of the contract because (1) the amount of yield tax must be based on a stumpage report, and no such report was filed here, and (2) the record at best supports only the finding that 10 % of the timber had been cut while the land was in the program, and thus no more than 10% of the land should have been subject to the yield tax.

Section 254.160 sets out how the amount of yield tax is to be determined:

Whenever a cutting shall be made other than as excepted in sections 254.140 and 254.150, of this chapter, *the owner of the land shall file a sworn statement with the commission of the quantity and species of timber cut;* this statement shall be filed not later than one month following said cutting or at the end of each month where the cutting is continuous. The *commission shall review this statement* and determine the stumpage value and forward its report to the director of revenue. The director of revenue or his agent shall arrange collection of the yield tax from the owner.

**Sec. 254.160** (emphasis added).

Thus, the statute requires that whenever a cutting is made, as occurred here, the owner of the land – Green Tree – is to file a statement with the Commission within a month of the cutting as to the quantity and species of timber cut. The Commission is to review the statement and is then to determine the value of the stumpage and forward that report to the Director of Revenue, who shall arrange for collection of the amount of applicable tax from the owner.

Green Tree admits that neither it nor the Roberts ever prepared or filed a statement with the Commission setting out the quantity and species of timber cut. It argues that in the absence of such a statement, the Commission had no basis on which to prepare a stumpage value report, and thus its report in which it purported to do so was without evidentiary basis and could not provide a basis for determining the yield tax due. Alternatively, it argues, even if the Commission could determine a stumpage value without the statement, the only evidence of the stumpage value was the inspector's statement that he thought 10% of the timber had been cut in September 1994, and so the yield tax could only be based on the cutting of 10% of the timber.

We reject Green Tree's arguments. Green Tree cannot avoid its statutory obligation to pay a yield tax by the simple expedient of failing to file the statement of the quantity and species of timber cut required by the statute. The legislature did not intend for a property owner such as Green Tree to benefit from its own statutory violation. In any event, the statute does not require the Commission to base its determination of stumpage value on the landowner's statement alone. It simply says that the Commission shall review it and shall determine stumpage value and forward its determination to the Director of Revenue for collection. Of course, the Commission would be permitted to look behind a landowner-filed statement in determining stumpage value, to ensure that the statement was accurate, and to look at other evidence as to the amount and nature of the cutting.

Here, there was no landowner statement as to the type and number of trees cut. The inspector had seen at least 10% of the trees cut by September 1994, however. The land was not cancelled from the program until December 1994. At that point, Green Tree had been paid the full $215,000 owed it under the contract for cutting the total amount of timber provided for in the contract. This was the only evidence before the Commission on this issue. Based on this evidence, the Commission determined that the stumpage value of the timber should be determined to be $215,000, and that the yield tax should be based on this amount. On November 26, 1997, the Commission so reported to the Director of Revenue as required under Section 254.160, attaching to a letter to the Director the judgment of the Circuit Court of Ste. Genevieve County which concurred with the Commission's determination, and requesting in the letter that the Director collect the tax in accordance with the attached judgment. The AHC agreed with

the Commission's determination as to stumpage value, and found that the Commission's letter to the Director complied with the statutory reporting requirement.

Our review of the AHC's decision "is limited to reviewing the decision of the agency, not the judgment of the trial court," *Missouri Dept. of Corrections v. Cheeney,* 926 S.W.2d 939, 941 (Mo.App. W.D.1996), and is limited to a determination of "whether that decision was supported by competent and substantial evidence on the whole record, or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of jurisdiction." *Psychiatric Healthcare Corp. of Mo. v. Department of Social Services, Div. Of Medical Services,* 996 S.W.2d 733, 735 (Mo.App. W.D.1999). Here, in the absence of more specific evidence provided by the landowner, the Commission did not err in determining that the yield tax should be based a stumpage value determined by the full contract price of $215,000.[5]

For the reasons set forth above, the judgment is affirmed.

Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON, concur.

---

5. Because of our resolution of this issue, we do not reach the issue whether the determination of the court in Ste. Genevieve County that Green Tree owed yield tax of $12,900.00

collaterally estopped Green Tree from contesting its liability for yield tax of that amount.