Opinion issued May 3, 2012.



In The

Court
of Appeals

For The

First
District of Texas

————————————

NOS. 01-11-00069-CR


          01-11-00070-CR

———————————

FERNANDO DAVALOS, Appellant

V.

THE STATE OF TEXAS, Appellee



 



On Appeal from
the 248th District Court

Harris County,
Texas



Trial
Court Case Nos. 1261747 &
1261748



 

MEMORANDUM
OPINION

After
the trial court denied his motion to suppress, appellant, Fernando Davalos,
pleaded guilty to the offenses of possession with intent to deliver more than
400 grams of cocaine[1]
and possession with intent to deliver more than 400 grams of ecstasy.[2] The
trial court then assessed punishment for each offense at 18 years’ confinement
to run concurrently. In his sole point of error, appellant complains that the
trial court erred in denying the motion to suppress because the evidence
against him was the product of an illegal search. We affirm.

BACKGROUND

On
May 4, 2010, at approximately 10:50 p.m., appellant was asleep in his living
room when six law enforcement officers in tactical uniforms arrived at his
home. Two or three of these officers approached the front door and knocked,
while the other officers remained in front of appellant’s house. When appellant’s
mother opened the door, the officers told her they wished to speak with
appellant and asked her to leave the front door open while she woke and
retrieved her son.[3]
Though appellant and his mother testified officers then entered the house without
consent while the mother was retrieving her son, the officers testified the son
came to the door and gave consent for the officers to enter. Once inside, the
officers performed a protective sweep of the home’s first story, and then two
or three officers sat with appellant at the kitchen table, while the others
remained eight to ten feet away in another room. The officers told appellant
they were conducting a narcotics investigation and asked for consent to search
his home. After appellant consented orally to a search of his home, an officer
asked appellant to read a consent form. The officer then read the consent form
to appellant, and appellant signed the form. The subsequent search of
appellant’s home revealed the drugs underlying the offenses for which appellant
was then arrested. 

STANDARD
OF REVIEW

In
reviewing the trial court’s ruling on a motion to suppress, we apply a
bifurcated standard of review. McKissick
v. State, 209 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d) (citing Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000)). We give almost total deference to the
trial court’s determination of historical facts that depend on credibility,
while we review de novo the trial court’s application of the law to those
facts. Id. We review de novo the
trial court’s application of the law of search and seizure and probable cause. Id. (citing State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Wilson v. State, 98 S.W.3d 265, 271
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d)).

Because
issues of consent are necessarily fact intensive, a trial court’s finding of
voluntariness must be accepted on appeal unless it is clearly erroneous. Meekins v. State, 340 S.W.3d 454, 460
(Tex. Crim. App. 2011). When, as here, a trial court makes explicit findings of
fact, we determine whether the evidence, viewed in the light most favorable to
the trial court’s ruling, supports the findings. See State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). The reviewing court will sustain the trial
court’s ruling if it is reasonably supported by the record and is correct on
any theory of law applicable to the case. Valtierra
v. State, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010).

ANALYSIS

In
his sole point of error, appellant contents that the police exceeded the scope
of a valid “knock and talk” with an excessive show of force, which effectively
“seized” him thereby rending his consent invalid.

Scope of
“Knock-and-Talk”

As long as a person in possession of
property has not made express orders prohibiting trespass, a police officer may
enter upon residential property, follow the usual path to the home’s front
door, and knock on it for the purpose of asking the occupant questions. Cornealius
v. State, 900 S.W.2d 731, 733–34 (Tex. Crim. App. 1995); Washington v.
State, 152 S.W.3d 209, 214 (Tex. App.—Amarillo Amarillo 2004, no pet.); Nored
v. State, 875 S.W.2d 392, 396–97 (Tex. App.—Dallas 1994, pet. ref’d).

Federal and state laws provide that
a police officer may approach a citizen in a public place or knock on a door to
ask questions or seek consent to search. Florida v. Bostick, 501 U.S.
429, 434, 111 S. Ct. 2382, 2386 (1991); State v. Perez, 85 S.W.3d 817,
819 (Tex. Crim. App. 2002); Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim.
App. 1997). Courts have defined a knock-and-talk as a
noncustodial procedure in which the officer identifies himself and asks to talk
to the home occupant, and then eventually requests permission to search the
residence. Hardesty v. Hamburg Twp., 461 F.3d 646, 658 (6th Cir. 2006)
(quoting United States v. Chambers, 395 F.3d 563, 568 n.2 (6th Cir. 2005)).
The knock-and-talk strategy is a
reasonable investigative tool. See United States v. Lewis, 476 F.3d 369,
381 (5th Cir. 2007); see also Hardesty, 461 F.3d at 658 (noting that
knock-and-talk can be legitimate effort to obtain suspect’s consent to search).
The purpose of a knock-and-talk is
not to create a show of force, make demands on occupants, or to raid a
residence. United States v. Gomez-Moreno, 479 F.3d 350, 355 (5th Cir. 2007).
Instead, the purpose of a knock-and-talk approach is to make investigatory inquiry or, if
officers reasonably suspect criminal activity, to gain the occupant’s consent
to search.  Id.

A police officer need not have reasonable suspicion or a
basis for suspecting a particular person to simply ask questions of that
individual or request consent to search, so long as the officer does not
indicate compliance with his request is required. See Bostick, 501 U.S.
at 434–35, 111 S. Ct. at 2386; Perez, 85 S.W.3d 819; Hunter, 955
S.W.2d at 104. Such an encounter is a consensual interaction, which the citizen
is free to terminate at any time. Hunter, 955 S.W.2d at 104. The
encounter is not considered a seizure, triggering Fourth Amendment scrutiny or
constitutional analysis, unless it loses its consensual nature. See Bostick,
501 U.S. at 434; Hunter, 955 S.W.2d at 104. Only when the officer, by
means of physical force or show of authority, has restrained the liberty of a
citizen may a court conclude that a seizure has occurred. Bostick, 501
U.S. at 434.  Courts
will uphold knock-and-talk procedures as constitutionally permissible
consensual encounters, “[s]o long as a reasonable person would feel free to
disregard the police and go about his business.” Hunter, 955 S.W.2d at 104 (quoting Bostick, 501 U.S. at 434, 111 S. Ct. at 2386). Whether a consensual
encounter loses its consensual nature and is thereby rendered a seizure is
evaluated under the totality of the circumstances and “the dispositive question
is whether the officers conveyed a message to appellant that compliance with
their requests was required.” Hunter,
955 S.W.2d at 104.

Appellant
argues that his consent is invalid because it resulted from an unlawful seizure
that occurred when officers entered his house without consent and detained him
inside his home. The first part of this contention—that officers entered
appellant’s home without consent—is supported by testimony of appellant and his
mother. However, three of the officers who participated in the search testified
at the suppression hearing that they entered appellant’s home only after
receiving consent from both appellant and his mother. The trial court could
therefore have reasonably resolved this conflicting testimony in favor of the
officers having entered upon consent. Daniels
v. State, 718 S.W.2d 702, 704 n.1 (Tex. Crim. App. 1998), overruled on other grounds, Juarez v. State, 758 S.W.2d 772, 780 n.3
(Tex. Crim. App. 1988) (“It was for the trial court, as the sole finder of fact
at the suppression hearing, to determine whose version of the facts was true[.]”).

Appellant
argues, however, that even if he consented to the officers entering his home,
the officers’ overall behavior constituted a seizure. Specifically, appellant
contends that six officers in tactical uniforms arriving at a late hour would
have given a reasonable person the impression an emergency was occurring and
that he or she was not at liberty to refuse to open the door. Although six
officers arrived at appellant’s house at approximately 11 p.m., the record is
uncontroverted that when appellant’s mother opened the door the officers
immediately explained to her they were at the home for the purpose of speaking
with appellant. If indeed appellant’s mother had only opened the door to
officers because she believed an emergency was occurring, at this point she could
have declined to speak further with the officers and closed the door.

There
is also conflicting testimony regarding the number of officers who knocked on
the door, whether officers yelled for appellant’s mother to open the door,
whether officers asked or ordered her to leave the door open, and whether
officers waited for consent before entering the home. However, the trial court
could have reasonably resolved these inconsistencies in favor of its ruling.
Indeed, the trial court’s findings of fact include a finding that the officers
who testified at the suppression hearing were credible. 

In
the light most favorable to the trial court’s ruling, the record reflects that
officers lawfully entered appellant’s home with the occupants’ consent. Two or
three officers then sat with appellant at the kitchen table, without blocking
his path to the front door, and asked for and received appellant’s consent to
search, both orally and in writing. Nothing in the record shows that
appellant’s consent was required or that he was compelled to comply with the
officers’ request. 

          Appellant
cites several non-binding decisions from other jurisdictions finding that
factually similar, but not identical, knock-and-talk scenarios resulted in
seizures. These cases might suggest that the trial court in this case would
have been within its discretion to find the appellant had been seized, but the
cases do not demonstrate that the trial court’s decision to deny the motion to
suppress was clearly erroneous.

For
these reasons we find that the knock-and-talk procedure did not result in a
seizure.[4]  Thus, we turn to the issue of whether
appellant voluntarily consented to the search of his home.

Consent

Under the Fourth and Fourteenth Amendments, a search conducted
without a warrant based on probable cause is “per se unreasonable . . . subject
only to a few specifically established and well-delineated exceptions.” Meekins, 340 S.W.3d at 458 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041 (1973)). One of those
exceptions is a search conducted with a person’s voluntary consent. Id. Valid consent must “not be coerced,
by explicit or implicit means, by implied threat or covert force.” Id. at 459 (quoting Schneckloth 412 U.S. at 228). The voluntariness of consent is a fact question determined by
analyzing all of the circumstances of a particular situation. Id. The trial judge must conduct a
careful sifting and balancing of the unique facts and circumstances of each
case in deciding whether a particular consent search was voluntary or coerced. Id.

Courts
review the totality of the circumstances of a particular police-citizen
interaction from the point of view of the objectively reasonable person, without
regard for the subjective thoughts or intents of either the officer or the
citizen. Id. (citing Maryland v. Macon, 472 U.S. 463, 470–71,
105 S. Ct. 2778 (1985)). The ultimate question is whether the person’s “will
ha[s] been overborne and his capacity for self-determination critically
impaired,” such that his consent to search must have been involuntary. Id. (quoting United
States v. Watson, 423 U.S. 411, 424, 96 S. Ct. 820
(1976)).

Under
Texas law, the State must “prove the voluntariness of a consent to search by
clear and convincing evidence.” Id. (quoting
State v. Ibarra, 953 S.W.2d 242, 245
(Tex. Crim. App. 1997)). In this analysis of voluntariness courts may consider
numerous factors, including “physical mistreatment, use of violence, threats,
threats of violence, promises or inducements, deception or trickery, and the
physical and mental condition and capacity of the defendant within the totality
of the circumstances.” Id. at 460
n.26 (quoting United States v. Pena,
143 F.3d 1363, 1367 (10th Cir. 1998)). We may additionally consider appellant’s
age, education, and intelligence, the length of detention, any constitutional
advice given to the defendant, the repetitiveness of the questioning, and the
use of physical punishment. See Reasor v. State, 12 S.W.3d 813, 818
(Tex. Crim. App. 2000). We may also consider whether appellant was in custody, or
had been arrested at gunpoint; whether appellant was warned that he need not
consent, and whether appellant had the option to refuse to consent. See Flores v. State, 172 S.W.3d 742,
749–50 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In examining the
totality of the circumstances surrounding consent to search, the trial court
should consider the circumstances before the search, reaction of the accused to
pressure, and any other factor deemed relevant. Reasor, 12 S.W.3d at 818.

In
this case, appellant argues his consent was coerced because six officers dressed
in tactical gear arrived at his home late at night, accused him of drug crimes
before requesting consent, failed to ascertain that he was able to speak
English, failed to read him his Miranda
rights, failed to inform him he could speak to a lawyer, and failed to inform
him he could refuse consent. 

We
note initially that officers and appellant’s mother testified to appellant’s
ability to speak, understand, read, and write English, and appellant himself
testified at the suppression hearing without a translator. Further, neither Miranda warnings nor awareness of a
right to refuse are required for voluntary consent. See Rayford v. State, 125
S.W.3d 521, 528 (Tex. Crim. App. 2003). And, although six officers entered
appellant’s home, only two or three sat with him at his kitchen table when
consent was obtained, and officers did not block the path from the kitchen
table to the front door. 

Regarding
appellant’s assertion that officers accused him of drug crimes before seeking
consent, the record does reflect that officers told appellant they were
conducting a narcotics investigation and wished to search his home for drugs. However,
appellant has not explained how this fact might contribute to coercion, nor
have we found any authority that consent is involuntary when officers inform a
suspect of the nature of an investigation or the object of an intended search.

While
the late-night arrival of six officers dressed in tactical uniforms might  create an intimidating environment, we are unpersuaded
the circumstances were sufficient to overbear appellant’s will and critically
impair “his capacity for self-determination.” Meekins, 340 S.W.3d at 459 (quoting Watson, 423 U.S. at 424). Indeed, “the
Constitution does not guarantee freedom from discomfort,” Carmouche v. State, 10 S.W.3d 223, 333 (Tex. Crim. App. 2000) (quoting
State v. Velasquez, 994 S.W.2d 676,
679 (Tex. Crim. App. 1999)), and “the Constitution presumes that an actor is
invested with a vibrant sense of his own constitutional rights and will assert
those rights when they are implicated.” Carmouche,
10 S.W.2d at 333. 

Viewing
the totality of the circumstances in the light most favorable to the trial
judge’s ruling, we conclude the trial court’s determination that appellant
voluntarily consented was not clearly erroneous.

 

CONCLUSION

We
affirm the judgment of the trial court. 

 

 

                                                          Sherry
Radack

                                                          Chief
Justice

 

 

Panel consists
of Chief Justice Radack and Justices Higley and Brown.

 

Do not
publish.  Tex. R. App. P. 47.2(b).











[1]           Trial court No. 1261747, appellate court
No. 01-11-00069-CR.

 





[2]           Trial court No. 1261748, appellate court
No. 01-11-00070-CR.

 





[3]           Appellant’s
mother testified at the suppression hearing that four officers knocked
loudly  on the door for approximately ten
minutes while yelling for the mother to open the door. Additionally, one of the
three officers who testified about the interaction at the front door with
appellant’s mother testified that officers instructed, rather than requested,
appellant’s mother to leave the front door open while she retrieved appellant. 





[4]           Even if the
knock-and-talk procedure had resulted in a seizure, this would not have
necessarily invalidated appellant’s consent to search his home. Brick v. State, 738 S.W.2d 676, 681
(Tex. Crim. App. 1987) (discussing procedure analyzing admissibility of evidenced
derived from consensual search following unlawful arrest).