**Leroy James HUNTER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 0576–95.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1997.

James R. Butler, Houston, for appellant.

Kimberly Aperauch Stelter, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

Appellant was convicted of possession of cocaine with intent to deliver. On appeal to the First District Court of Appeals, appellant complained of the trial court's denial of his motion to suppress the cocaine based upon his claim that the police officers had lacked reasonable suspicion to detain him. The Court of Appeals agreed with appellant and reversed the judgment of the trial court. *Hunter v. State,* No. 01–93–01158–CR, 1995 WL 215182 (Tex.App.—Houston [1st Dist.], 1993)(unpublished). We granted the State's petition for discretionary review to decide whether the Court of Appeals erred in concluding that appellant was "detained" so as to call for reasonable suspicion.[1]

Officers Ralph Rodriguez and Danny Furstenfeld were monitoring the downtown Houston bus station for drug traffickers when they approached appellant as he waited to board a bus to Baton Rouge. Rodriguez asked appellant for permission to speak with him and identified himself as a police officer. He questioned appellant while Furstenfeld stood several feet back, but within hearing range. He asked appellant about where he was traveling and then asked if he could see appellant's bus ticket. Appellant proffered his ticket. Rodriguez returned the ticket to appellant and then asked to see his identification. Appellant had none. He asked if appellant was carrying any narcotics. Appellant replied that he was not. Rodriguez then told appellant that he was a narcotics officer conducting a narcotics interview. He asked appellant if he could look inside his bag, but also informed appellant that he "did not have

to let me." Appellant nevertheless agreed to the search of his bag. During that search Rodriguez discovered a white substance, which later proved to be cocaine.

Appellant was subsequently charged with possession of over 400 grams of cocaine and he entered a not guilty plea. The trial court assessed a punishment of twenty-five years confinement and a $50,000 fine. Prior to the disposition of his guilt, however, appellant moved to suppress the cocaine found in his bag, contending that although he had been "detained" by the police officers, there was no "reasonable suspicion" to support the detention. The trial court denied his motion.

The Court of Appeals held that "when Officer Rodriguez' informed appellant that he was a narcotics officer conducting a narcotics interview and he requested permission to search appellant's luggage, a reasonable person in appellant's position would not have believed he was free to leave. At this point, a detention resulted." *Hunter,* slip op. at 5. The State argues the Court of Appeals opinion does not address the Supreme Court's opinion in *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), which held that officers need not have any level of suspicion to simply ask for permission to do something so long as the officers don't indicate that compliance is required. The State reasons that if an officer does not need reasonable suspicion to request consent to search, then it should not be the case that a person is "detained" solely by virtue of such a request (for which the officer would need reasonable suspicion). Appellant points to this Court's opinion in *Daniels v. State,* 718 S.W.2d 702 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State,* 758 S.W.2d 772, 780 n. 3 (Tex.Crim. App.1988), to support his argument that a defendant is in fact detained by virtue of an officer's request to search his luggage or bag.

---

1. We granted review and herein address the State's first ground for review:

   Does a request for permission to search a defendant's luggage turn an otherwise consensual search into a detention?

We also granted the State's second ground for review, whether the Court of Appeals erred in its determination as to the existence of reasonable suspicion. Given our disposition of ground for review one, we dismiss the State's second ground as improvidently granted.

Not every encounter between police and citizens implicates the Fourth Amendment. *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386. A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen. Such encounters are consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386 (quoting *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). The Supreme Court in *Bostick* emphasized that

> [W]hen officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ...; ask to examine the individual's identification, ...; and request consent to search his or her luggage, ... *as long as the police do not convey a message that compliance with their requests is required.*

*Id.* at 435, 111 S.Ct. at 2386 (citations omitted); *id.* at 437, 111 S.Ct. at 2387–88 (reiterating same test). As in all cases involving a determination of whether a "seizure" has occurred for Fourth Amendment purposes, the particular encounter is assessed by looking at the totality of the circumstances. *Id.* at 439, 111 S.Ct. at 2388–89.

And so the encounter between appellant and the officers in this case was not rendered a "detention" simply by virtue of the facts that the officers asked for appellant's identification and requested to search his bag. Rather, the dispositive question is whether the officers conveyed a message to appellant that compliance with their requests was required. Another look at all of the circumstances is necessary to this determination.

The officers were dressed in plain clothes and their weapons were not visible. They approached appellant and Rodriguez asked appellant if he could speak with him and identified himself as a police officer. Furstenfeld stood approximately eight to ten feet away during the encounter. Rodriguez asked appellant some questions about his travel plans and then asked to see his bus ticket. Rodriguez returned the ticket to appellant and asked to see his identification. Rodriguez stated that he had none. Rodriguez asked appellant if he was carrying narcotics, to which appellant replied that he was not. Rodriguez then identified himself as a narcotics agent conducting a narcotics interview and asked permission to look inside appellant's bag. He informed appellant that he did not have to consent to the search.[2] Appellant told Rodriguez to "go ahead."

Several facts are noteworthy in deciding whether the officers conveyed a message that compliance with their requests was required. The officers were dressed in plain clothes. Their weapons were concealed throughout the encounter. To the extent that two officers are more intimidating than one, only Rodriguez actually engaged appellant, while Furstenfeld stood several feet back. Rodriguez did not retain appellant's ticket, but gave it back to him. Rodriguez did not affirmatively state that he believed appellant was carrying drugs. Rodriguez specifically told appellant that he did not have to allow him to look in his bag. Rodriguez did not suggest that he would get a search warrant if appellant did not permit him to look in the bag. There is nothing in these facts that conveyed a message that appellant was required to comply with Rodriguez' requests. Under these facts, a reasonable person would have felt free to walk away from Rodriguez at any time during the encounter, prior to the search of the bag. The Court of Appeals erred in holding that a detention occurred because a reasonable, innocent[3] person would not have felt free to

---

2. In contrast to Rodriguez' testimony, appellant testified at trial that Rodriguez never asked permission to search appellant's bag and appellant never gave any such permission. We resolve this conflict in the evidence in favor of the State in this case, given the trial court's ruling on appellant's motion to suppress. As we stated in *Daniels*, "It was for the trial court, as the sole finder of fact at the suppression hearing, to determine whose version of the facts was true." *Daniels*, 718 S.W.2d at 704 n. 1.

3. In *Bostick*, the Supreme Court expressly rejected the defendant's argument that no reasonable person would freely consent to a search of luggage that he knows contains drugs. The Court stated, "[t]his argument cannot prevail because the 'reasonable person' test presupposes an *inno-*

leave.[4]

The Court of Appeals relied upon *Holladay v. State*, 805 S.W.2d 464 (Tex.Crim.App. 1991). In both H*olladay*, supra, and *Daniels*, supra, we held or stated that a detention occurred when the narcotics officers requested to see the defendant's identification and plane ticket, and asked permission to search the defendant's bags. In *Holladay*, we specifically stated that the consensual encounter was rendered a detention at the point the officers asked permission to search the defendant's luggage. *Holladay*, 805 S.W.2d at 472 (officer's "request for permission to search appellant's luggage converted this initial encounter into an investigative one"). In both cases, as here, the officers were in plain clothes, the officers identified themselves as narcotics investigators, and the defendants were all told that they did not have to consent to the requested search.[5] Both cases relied upon *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), to support their holdings that a detention had occurred. *Holladay*, 805 S.W.2d at 472 (citing *Daniels* and *Royer* as support for holding detention occurred); *Daniels*, 718 S.W.2d at 706 n. 2 (citing Justice Brennan's concurring opinion in *Royer* as support for holding detention occurred). But the facts in *Royer*, a plurality opinion, were quite different. In *Royer*, the Supreme Court held, "Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment." *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326. Although Justice Brennan in a separate concurring opinion stated that "once an officer has identified himself and asked a traveler for identification and his airline ticket, the traveler has been "seized" within the meaning of the Fourth Amendment," no other justices joined this opinion and it is clearly not the law. *Id.* at 511, 103 S.Ct. at 1331 (Brennan, J., concurring in result).

■ *Bostick*, a majority opinion, decided after *Royer*, made exceedingly clear that asking for identification and permission to search a person's bags does not automatically mean that a detention has occurred. *Bostick*, supra. In *Bostick*, the defendant was a passenger on a bus which was boarded during a stopover by two police officers "complete with badges, insignia and one of them holding a recognizable zipper pouch." The

cent *person."* Bostick, *501 U.S. at 438, 111 S.Ct. at 2388.*

**4.** We observe that the Court of Appeals conducted a *de novo* review, affording little or no deference to the trial court's ruling on the question of the detention. We recently held that courts of appeals

should afford almost total deference to a trial court's determination of the historical facts that the record supports [and] ... should afford the same amount of deference to trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," *if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.* The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

*Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997)(emphasis added) (citations omitted). The Court of Appeals properly afforded "almost total deference" to the trial court's determination of the historical facts supported by the record, as do we. *See* fn. 2, supra. The

resolution of the mixed question of law and fact presented here—whether appellant was "detained" within the meaning of the Fourth Amendment—does not "turn" on an evaluation of *credibility and demeanor. In other words,* even if we believed everything testified to by the State's witnesses, that testimony may not add up to a finding that appellant was not detained under the law. Therefore, the Court of Appeals applied the proper standard of review in this case by reviewing *"de novo* '[this] mixed question[ ] of law and fact' not falling within this category." Further, this Court "may review *de novo* these decisions by the intermediate appellate courts," as here. *Guzman*, supra.

**5.** An additional relevant fact existed in *Daniels*, which was not mentioned by the Court in stating that a detention had occurred—when the officer asked permission to search the defendant's bag, he informed him that he did not have to consent, *but could require the officer to produce a search warrant.* In *Daniels*, however, the State conceded that a detention had occurred, so that issue did not have to be fully explored by the Court.

officers asked to inspect the defendant's ticket and identification and both were returned to him. They identified themselves as narcotics agents looking for illegal drugs, and then requested the defendant's consent to search his luggage. While the Court did not ultimately decide whether a detention occurred, but remanded the case for the state courts to make that determination, it nevertheless emphasized *what was not* a detention: [6]

> The facts of this case ... leave some doubt whether a seizure occurred. Two officers walked up to Bostick on the bus, asked him a few questions, and asked if they could search his bags. *As we have explained, no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required.* Here, the facts indicate that the officers did not point guns at Bostick or otherwise threaten him and that they specifically advised Bostick that he could refuse consent.

*Bostick,* 501 U.S. at 437, 111 S.Ct. at 2387–88 (emphasis added). In *Daniels* and *Holladay,* we concluded a detention occurred based exclusively on the facts that the officers had requested identification, had identified themselves as narcotics officers, and requested permission to search the bag. The inquiry is more complicated than we indicated in those cases. A police officer's asking questions and requesting consent to search do not alone render an encounter a detention. *Only if the officer conveyed a message that compliance was required* has a consensual encounter become a detention. *Holladay* and *Daniels* are overruled to the extent that they failed to consider this critical question. In this case, considering the totality of the circumstances, there is no indication that the officers conveyed a message that appellant

was required to answer their questions or permit the search of his bag.

The judgment of the Court of Appeals is reversed and this cause is remanded to that court in accordance with this opinion.

MANSFIELD, Judge, concurring.

I join the opinion of the Court and write further to express my opinion that the judgment of the court of appeals should be reversed, applying the principles recently set forth in *Villarreal v. State,* 935 S.W.2d 134 (Tex.Crim.App.1996) (plurality opinion).

To help place everything in its proper context, a brief synopsis of the relevant facts follows: On April 22, 1993, two Houston Police Officers, Rodriguez and Furstenfeld, were working their assigned beat as drug interdiction at the Greyhound bus station near downtown Houston. The officers testified at the hearing on appellant's motion to suppress that, based on their several years of experience, individuals using the bus to transport narcotics from Houston to other cities generally fit certain patterns of behavior, which they described in considerable detail.

The officers observed appellant as he entered the bus station. Appellant was next observed arriving at the gate for the bus to New Orleans right before its scheduled departure time, carrying a new duffle bag. Appellant was also observed looking around anxiously and acting nervously in general while waiting to get on the bus. The officers, both in plain clothes, approached appellant. Officer Rodriguez showed appellant his badge and asked if he could speak with him. Appellant said "yes." Appellant replied "yes" to Officer Rodriguez's question as to whether he was taking the bus to New Orleans. Appellant continued to act nervously and showed Officer Rodriguez a one-way ticket to Baton Rouge, paid for with cash.

---

**6.** The Florida Supreme Court fashioned a *per se* rule prohibiting the police from randomly boarding buses in an effort to intercept drug traffickers based solely on the circumstances associated with being a passenger on a bus. Noting that "the Florida Supreme Court rested its decision on a single fact—that the encounter took place on a bus—rather than on the totality of the circumstances" the Court declined to decide the issue, but remanded it for reconsideration under the correct legal standard. *Bostick,* 501 U.S. at 437, 111 S.Ct. at 2388. The Court emphasized that the cramped confines of the bus were only one factor to be considered in assessing whether the consent to search was voluntary. *Id.* at 439, 111 S.Ct. at 2388–89.

Officer Rodriguez testified drug couriers generally purchase one-way tickets with cash. Appellant was unable to produce any identification, also a characteristic common for drug couriers, the Officer testified, as was his behavior in general.

Finally, Officer Rodriguez testified he asked appellant for permission to look in his bag, and testified further he told appellant he did not have to give him permission to look and, had he not received permission to do so, he would not have. Appellant told Officer Rodriguez to "go ahead." Rodriguez found a large quantity of crack cocaine in the bag and place appellant under arrest.

The trial court, after a hearing, overruled appellant's motion to suppress, finding, in effect, appellant had not been "seized" or "detained" when he gave permission to Officer Rodriguez, therefore making the search consensual and thus not implicating the United States or Texas constitutions' provisions barring unreasonable searches and seizures. Appellant was subsequently convicted for possession of over 400 grams of cocaine and sentenced to twenty-five years in prison.

On appeal, the First Court of Appeals held that a "detention" resulted at the point Officer Rodriguez approached appellant, told him he was a narcotics officer and requested permission to search appellant's bag. Citing *Holladay v. State,* 805 S.W.2d 464, 472 (Tex. Crim.App.1991), the court of appeals held further a reasonable person in appellant's position would not have believed he was free to leave. *Hunter v. State,* No. 01–93–01158–CR, 1995 WL 215182 (Tex.App.—Houston [1st Dist.], delivered April 13, 1995) (unpublished). The court of appeals further held the officers lacked reasonable suspicion to detain appellant, reasoning the various factors testified to by Officer Rodriguez—in effect, a drug courier profile—observed as part of appellant's behavior were as consistent with innocent behavior as criminal behavior. Accordingly, the court of appeals sustained appellant's first point of error, reversed the judgment of the trial court and remanded the cause for a new trial. *Hunter, supra,* slip op. at 5–6.

We granted the State's petition for discretionary review to consider the following two grounds for review:

(1) Does a request for permission to search a defendant's luggage turn an otherwise consensual contact into a detention?

(2) Did the court of appeals ignore testimony as to the significance of certain factors in determining that the officers had no reasonable suspicion?

A trial court's ruling on a motion to suppress lies within the sound discretion of that court. At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The reason for this rule is that the trial court, who observes the demeanor and appearance of the witnesses, is in a better position to determine their credibility than the appellate court is by reading their testimony as it appears in the record. Therefore, an appellate court must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, and must sustain the trial court's ruling if it is reasonably supported by the record · and is correct on any theory of law applicable to the case. *Villarreal, supra; Romero, supra.*

The concepts of "detention" and "reasonable suspicion" are by their nature, legal concepts. Therefore, the court of appeals did not act improperly in deciding *de novo* the questions of whether appellant was "detained" when he was asked by Officer Rodriguez for permission to search his duffel bag and whether the officers had "reasonable suspicion" to approach appellant on the ground his behavior fit the "profile" of a drug courier. An appellate court is generally in a better position to decide such questions of law than is a trial court. *See Miller v. Fenton,* 474 U.S. 104, 113–14, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405, (1985); *United States v. McConney,* 728 F.2d 1195, 1200–04 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *See also Chapa v. State,* 729 S.W.2d 723, 728 (Tex. Crim.App.1987).

Most significantly, the court of appeals did not address the holding of the United States Supreme Court in *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), which is not cited in its opinion. In *Florida v. Bostick*, the Supreme Court held that there is no detention, for purposes of the Fourth Amendment, where a police officer, even if he has no basis for suspecting the individual, generally asks questions of the individual and asks for the individual's identification. Furthermore, the officer may ask for consent to search the individual's luggage, provided the officer makes it clear that the individual is not required to give consent. *Florida v. Bostick, supra*, at 433–39, 111 S.Ct. at 2386–88. *Florida v. Bostick* is squarely on point as to whether appellant's encounter with Officer Rodriguez constitutes a detention under the Fourth Amendment to the United States Constitution; the Supreme Court has ruled such encounters are not. The court of appeals does not cite any authority that a different result would be reached under Article I, § 9 of the Texas Constitution.

The court of appeals, in my opinion, also failed to give proper deference to the findings of the trial court, which, as we have held, is the sole factfinder at a hearing on a motion to suppress, and whose finding, if supported by the record, will not be disturbed on appeal. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980). In effect, the court of appeals ignored the trial court's findings of fact when it announced what amounts to a new rule of law that an individual is always "seized" or "detained" when an officer requests permission to search. While the court of appeals is certainly entitled to conduct *de novo* reviews of the trial court's rulings on questions of law, *Villarreal, supra*, and *Chapa, supra*, we may conduct *de novo* reviews as to the courts of appeals' holdings on questions of law. *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). Indeed, we are often required to do so, for example, when there is a conflict as to a question of law between two courts of appeals.

Accordingly, whether police questioning of an individual constitutes a "seizure" or "detention" is to be determined on a case-by-case basis by examining the facts and circumstances surrounding the encounter. The record in the present case demonstrates the trial court conducted a lengthy hearing and made extensive findings of fact which support its conclusion of law that appellant was not "seized" or "detained" when Officer Rodriguez asked to search his duffel bag.

With these comments, I join the opinion of the Court.