**Gerald Anthony BUYCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–98–00106–CR.**

Court of Appeals of Texas,
San Antonio.

April 14, 1999.

Mike DeGeurin, Foreman, Degeurin & Nugent, Houston, for Appellant.

John B. Holmes, Jr., District Attorney-Harris County, Dan McCrory, Assistant District Attorney, Houston, for Appellee.

Before CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

This appeal questions whether police officers "detained" Gerald Anthony Buyck when they searched his bag while on board a Greyhound bus. In the wake of this search, the officers found a package containing over 400 grams of cocaine on Buyck's person. Buyck was convicted of possession and was sentenced to fifteen years imprisonment. On appeal, Buyck argues the cocaine was improperly admitted at his trial because it was the fruit of an illegal detention. We hold Buyck was not detained during the initial search of his

bag, which gave the police reasonable suspicion to detain Buyck for further investigation. Accordingly, we affirm.

## Background

The facts surrounding Buyck's encounter with Houston police emanate from the suppression testimony of Officers Ralph Rodriguez and Dena Harmon. On November 26, 1996, Rodriguez was on interdiction detail at Houston's Greyhound bus station where he observed Buyck waiting in line to board a bus bound for Miami by way of Mobile. According to Rodriguez, the interdiction team frequently surveyed passengers waiting to board this bus, which travels a route frequently traveled by drug couriers. Rodriguez observed Buyck carrying two pieces of luggage: a duffel bag and a garment bag that appeared to be empty. Buyck periodically scanned the area around him by looking at the reflections in a nearby plate-glass door. Upon boarding the bus, Buyck chose a seat on the driver's side of the bus after placing the garment bag in the overhead storage bin above him and his duffel bag in the overhead storage bin across the aisle.

Rodriguez then approached the bus and asked the bus driver, who was standing outside the bus, to show him Buyck's ticket. From this ticket, Rodriguez learned that Buyck paid cash for his ticket on the 10:00 p.m. bus to Mobile at 9:50 p.m. that evening. Rodriguez found this last-minute cash purchase suspicious.

With the bus driver's permission, Rodriguez boarded the bus, accompanied by Officer Dena Harmon. The bus was crowded, with approximately forty-six passengers on board. According to the officers' suppression testimony, their request to board did not delay the bus's departure. The officers were dressed in plain clothes and displayed no weapons. Officer Harmon positioned herself near the driver's seat while Rodriguez approached Buyck, who made direct eye contact with him. Without being requested to do so, Buyck stood up. Rodriguez assured Buyck "everything was okay," informed Buyck he could remain seated, and proceeded to ask Buyck a series of questions. Buyck indicated he lived in Mobile and had traveled to Houston to visit family and friends for two weeks. When asked where his family lived, Buyck mumbled a name Rodriguez could not understand. Complying with Rodriguez's request, Buyck produced his bus ticket and identification. Buyck appeared nervous as he fumbled through the contents of his duffel bag in search of his identification.

Rodriguez then questioned Buyck about his belongings. Buyck claimed ownership of both the duffel bag and the garment bag. When asked whether he was carrying narcotics on his person or in his baggage, Buyck claimed he was not. Rodriguez then asked whether he could look in Buyck's bags and informed Buyck compliance was not mandatory. Buyck responded by opening the main compartment of his duffel bag, pushing some of its contents to the side while stating he had nothing in the bag. Rodriguez again asked Buyck if he could look inside the bag "for officer's safety" and Buyck gave his permission.

Inside Buyck's bag, Rodriguez examined a tennis shoe by touch and detected something "lumpy." Inside the shoe, he found a dirty sock that contained "several hundred" small plastic bags. In Rodriguez's experience, these bags are often used to distribute narcotics like marijuana, powder cocaine, or crack cocaine. With this in mind, Rodriguez asked whether Buyck would agree to step off the bus with him, explaining the search would be expedited away from the many passengers moving around the bus. Buyck agreed to exit the bus. Just before exiting at the front of the bus, Rodriguez asked whether he could do a pat-down search of Buyck and informed Buyck that compliance was not required. Buyck responded by raising his arms to his chest; Rodriguez conducted the pat-down.

Rodriguez first felt the area around Buyck's waist and crotch. In Rodriguez's experience, narcotics couriers carry weapons and contraband in that anatomical region. Rodriguez felt a "rather hard bulge in [Buyck's] crotch area that was inconsistent with the human anatomy" and suspected Buyck of carrying narcotics. At that time, Rodriguez informed Buyck he was detained. Buyck attempted to escape but was restrained. The officers escorted Buyck to the bus station's security office and ordered Buyck to remove his pants. Over 400 grams of powder cocaine were discovered near Buyck's genital area.

## Discussion

As Buyck acknowledges, the facts underlying this appeal are not in dispute. Rather, the parties dispute the trial court's legal determinations, which we review de novo. *See Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). Buyck argues he was detained, without reasonable suspicion, when Rodriguez asked to look inside the duffel bag. We disagree with Buyck's conclusion he was detained during the initial search of his duffel bag. We also hold, however, that the facts surrounding this consensual encounter gave officers reasonable suspicion to detain Buyck for further investigation.

■ Not every encounter between a citizen and the police constitutes a "detention" implicating the Fourth Amendment. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim.App.1997). In particular, consensual encounters trigger no Fourth Amendment scrutiny. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Thus, we first consider the character of Buyck's encounter with the officers. To classify an encounter where "freedom of movement was restricted by a factor independent of police conduct—i.e. by [ ] being a passenger on a bus," we question "whether a reasonable person would feel free to decline the officers' re-

quests or otherwise terminate the encounter." *Id.* at 436, 111 S.Ct. 2382; *see also INS v. Delgado*, 466 U.S. 210, 218, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). This analysis implicates the totality of the circumstances surrounding the encounter. *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382; *see also Hunter*, 955 S.W.2d at 104. Where the encounter took place is only one factor in the analysis. *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382. Finally, if specific articulable facts, which taken together with the rational inferences from those facts, led authorities to conclude that Buyck actually was, had been, or soon would be engaged in criminal activity, any detention occurring after the initial consensual encounter would be lawful. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim.App.1997); *see also In re A.D.D.*, 974 S.W.2d 299, 306 (Tex.App.—San Antonio 1998, no pet.). This inquiry also requires us to consider the totality of the circumstances. *See Woods*, 956 S.W.2d at 38.

■ When he initially approached Buyck, Rodriguez was dressed in plain clothes, displayed no weapon, and spoke without threats or accusations. Rodriguez asked to look inside Buyck's bag only after informing him he did not have to consent to the search. Under these facts and circumstances, a reasonable person would have felt free to decline Rodriguez's request. *See id.* (suggesting no detention occurs where compliance with requests is not required); *see also Hunter*, 955 S.W.2d at 104 (same). *Cf. Mitchell v. State*, 831 S.W.2d 829, 833 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (holding that detention occurs when an officer threatens to use a narcotics dog). Accordingly, we hold Buyck was not detained when Rodriguez searched the duffel bag. We need not address, therefore, whether Rodriguez had reasonable suspicion to approach Buyck. *See Hernandez v. State*, 963 S.W.2d 921, 925 (Tex.App.—San Antonio 1998, pet. ref'd).

In the alternative, Buyck argues the officers detained him without reasonable suspicion when they asked him to accompany them to the front of the bus for a more thorough search of his bag. Without deciding whether this constituted a detention, we hold that the facts and circumstances emanating from the initial search of Buyck's bag gave the officers reasonable suspicion to detain Buyck for further investigation. As a result of the consensual search of Buyck's bag, Rodriguez found the small plastic bags which, in his experience, indicated Buyck could either be transporting illegal drugs or planning to distribute them. Combining this information with that previously gathered upon first observing Buyck in the bus station, the officers had reasonable suspicion to detain Buyck for further investigation. Accordingly, any detention occurring after the initial, consensual search of Buyck's duffel bag was supported by reasonable suspicion.

### Conclusion

Because we hold Buyck was not detained when his bag was initially searched and that any subsequent detention was supported by reasonable suspicion, the trial court correctly ruled the contraband was admissible. We therefore affirm the trial court's judgment.