NUMBER 13-01-053-CR

 

                              COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                       CORPUS
 CHRISTI B
EDINBURG

 

 

REGINALD
HARRIS,                                                               Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                           Appellee.

 

                                                                                                         

                         On appeal from the
197th District Court

                                 of Cameron
 County,
Texas.

 

                                    O P I N I
O N

 

         Before Chief Justice Valdez
and Justices Hinojosa and Castillo 

                              Opinion
by Chief Justice Valdez








Reginald Harris, appellant,
pleaded guilty to, and was convicted of, the offense of possession of
marihuana, with an enhancement count. 
The court assessed punishment at ten years confinement in the Texas
Department of Criminal Justice, Institutional Division.  Appellant appeals the trial court=s denial of a
pre-trial motion to suppress.  We affirm.
         

                                           Fact
Summary

Officer Jose F. Garcia, a narcotics investigator with the
Harlingen Police Department, stationed at the bus station, spotted appellant as
he stood in line to board a Houston-bound bus.[1]  Garcia testified he approached appellant as
he waited in line to board the bus, identified himself as a police officer and
then began to question appellant. 
Another officer stood nearby with a drug-sniffing canine.  Appellant agreed to talk to Garcia, who asked
him where he was traveling and if he had anything illegal in his bag.  Appellant told Garcia he was traveling to Houston, Texas, and that he
had nothing illegal in his carry on bag. 
Garcia asked if he could look in appellant's bag, and appellant said Ayes.@  Garcia then asked if he could open the bag,
and appellant again answered Ayes@ and Garcia
opened the bag.








Appellant=s testimony
conflicts with that of Garcia=s.  Appellant testified that Garcia asked appellant
for consent to search his bag, to which appellant responded Ano.@  At that point, Garcia backed appellant up
against a wall and called the canine handler over to bring the drug sniffing
canine to sniff appellant=s bag.  Then, according to appellant, the canine gave
a positive sign and the officers handcuffed appellant and opened the bag.  It was undisputed that appellant=s bag contained
slightly less than five pounds of marihuana. 

The trial court denied appellant's motion to suppress the
marihuana.  Thereafter, appellant pled
guilty, without a plea agreement.  The
trial court found appellant guilty and sentenced him to ten years imprisonment.  Appellant appeals the trial court=s denial of the
motion to suppress.

Appellant raises two issues on appeal: (1) whether the
Harlingen Police Department, without a plan or guidelines to control police
actions, may ask passengers boarding at the bus station, at random, for
permission to search their luggage, and if consent is not given, then use that
refusal as articulable suspicion to search said
luggage; and, (2) whether there was reasonable suspicion sufficient to justify
appellant=s detention.

                                                Standard
of Review








The standards of appellate review of motions to suppress are
set forth in Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
The appropriate standard of review depends on the exact issues
presented.  Guzman recognizes
three different categories of questions and provides the appropriate standard
of review for each.  Id.  Where the issue presented involves the trial
court=s determination
of historical facts supported by the record, especially those in which the fact
findings are based on an evaluation of credibility and demeanor, the appellate
court should afford almost total deference to the trial court=s
determination.  Id.  Where the issue presented involves the trial
court=s rulings on Aapplication of
law to fact questions,@ also known as Amixed questions
of law and fact,@ and where the
resolution of those ultimate questions turns on an evaluation of credibility
and demeanor, the appellate court should again afford almost total deference to
the trial court=s rulings.  Id. 
Where the issue presented involves Amixed questions
of law and fact@ which do not
fall into the second category, that is, do not turn on an evaluation of
credibility and demeanor, then de novo review is appropriate.  Id. 
However, the reviewing court should still afford deference to the trial
court on the subsidiary factual questions which fall into the first
category.  Id. 

In most cases, an appellate court=s review of a ruling on a motion to
suppress will be under a bifurcated standard, in which the historical
determinations made by the trial court will be accorded almost total deference
while the application of the law to the facts will be analyzed under a de
novo standard of review.  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App.
2000).  The evidence in the present case
was controverted, and accordingly, we will grant almost
complete deference to the trial court's finding of the historical facts but we
will review de novo the application of the law to the facts.  Guzman, 955 S.W.2d at 89; see also
Hunter v. State, 955 S.W.2d 102, 105 n.4 (Tex. Crim.
App. 1997) (noting that the resolution of the issue of whether an appellant was
detained within the meaning of the Fourth Amendment did not turn on the
evaluation of credibility and demeanor). 








When the trial court fails to file findings of fact, we view
the evidence in the light most favorable to the trial court's ruling and assume
that the trial court made implicit findings of fact that support its ruling as
long as those findings are supported by the record.  Ross, 32 S.W.3d at 855.   If the trial judge's decision is correct on
any theory of law applicable to the case, the decision will be sustained.  Id. at 856.

                                                The
Detention Issue

We first address appellant=s second issue,
in which we are asked to decide if a detention occurred and, if so, whether the
officers had reasonable suspicion to detain the appellant.

Appellant argues that after he was approached by Officer Garcia
and asked questions, he was detained without the officer having reasonable
suspicion that appellant was engaged in criminal activity.  We must first decide whether appellant was
detained.  








Not all encounters between police and citizens invoke the
protection of the Fourth Amendment.  Florida
v. Bostick, 501 U.S. 429, 434 (1991); Hunter,
955 S.W.2d at 104.  Police are as free as
anyone else to ask questions of their fellow citizens.  Bostick, 501
U.S. at 434; Hunter, 955 S.W.2d at 104. 
The encounter will not trigger Fourth Amendment scrutiny unless it loses
its consensual nature.  Bostick, 501 U.S. at 434.  The appropriate inquiry in determining if the
appellant was seized or detained for purposes of the Fourth Amendment is Awhether the
police conduct would have communicated to a reasonable person that the person
was not free to decline the officers= requests or
otherwise terminate the encounter.  [The
test] applies to encounters that take place on a city street or in an airport
lobby, and it applies equally to encounters on a bus.@  State v. Velasquez, 994 S.W.2d 676,
679 (Tex. Crim. App. 1999) (citing Florida v. Bostick, 501 U.S. 429, 440 (1991)).

In Hunter, the Court of Criminal Appeals held that an
encounter Awas not
rendered a >detention= simply by
virtue of the fact that the officers asked for appellant's identification and
requested to search his bag.@  Hunter, 955 S.W.2d at 104.  The court asserted that the dispositive question was Awhether the officers conveyed a message to
appellant that compliance with their requests was required.@  Id. 
The court noted that the officers were dressed in plain clothes, and
their weapons were not visible.  Id.  They identified themselves as police
officers, with one officer standing apart. 
Id.  The defendant was
questioned about his travel plans, but his ticket was not retained.  Id. 
Further, the defendant was informed that he was not required to consent
to the search, and no suggestion was made that a search warrant would be
obtained if defendant did not consent to the search.  Id. 









The facts in the present case[2]
are similar to those in Hunter. 
Officer Garcia testified that he was dressed in plain clothes, and there
was no testimony as to whether his weapon was visible or not.  Garcia had just finished questioning boarded
passengers and was disembarking from the bus, when he saw appellant standing in
line to board the bus.  The other officer
and canine were Anearby.@  The record is devoid of any testimony as to
whether or not the other officer at the bus station was in uniform or had a
weapon.  Garcia states he did identify
himself as a police officer and began questioning appellant, but did not advise
appellant that he could refuse consent to search.  However, this one fact is not dispositive.  Velasquez,
994 S.W.2d at 679.

We find, taking into account all of the circumstances
surrounding the encounter, that the officers= actions would not have communicated to a
reasonable person in the appellant=s position that
he was not free to decline the officers= requests or
otherwise terminate the encounter. 
Accordingly, we hold that appellant was not detained when Officer Garcia
asked appellant for consent to search his carry-on bag.  Appellant=s second issue is overruled.

                                               The
Checkpoint Issue

In issue one, appellant argues that the officers set up a Acheckpoint@ at the
Harlingen bus station, by questioning each northbound passenger with carry-on
luggage.  Appellant further argues that
the officers operating this checkpoint had no procedures or guidelines as
required by the U.S. Supreme Court=s decisions in Michigan
v. Sitz, 496 U.S. 444, 455 (1990), and Brown
v. Texas, 443 U.S. 47, 51 (1979).

In Sitz, the issue before the
Supreme Court was whether traffic stops at a D.W.I. roadblock were Areasonable@ under the
Fourth Amendment.  The court held that
the Fourth Amendment is implicated in checkpoint cases because a Aseizure@ occurs when a
vehicle is stopped at a checkpoint.  Sitz, 496 U.S. at 450.  The State of Michigan conceded that a Fourth
Amendment Aseizure@ does take
place when a vehicle is stopped at a checkpoint.  Id. 









In the present case, however, we have already found that the
officers did not detain appellant, and therefore there was no Aseizure@ of appellant=s person which
would implicate the Fourth Amendment. 
Because we have held that appellant was not detained by the State, we
further find that the requirements of Brown and Sitz
are not applicable in the present case. 
Appellant=s first issue
is overruled.     

We affirm the judgment of the trial court. 

 

_____________________

ROGELIO
VALDEZ

Chief
Justice

 

Do not Publish.

Tex. R. App. P. 47.3(b).

 

Opinion
delivered and filed

this
9th day of  May, 2002.











[1]
The officer=s duty that day
included narcotics interdiction at the Harlingen
bus station.  The officer was at the
station to interview north-bound passengers and request consent to search their
luggage. 

 





[2]
The trial court did not file findings of fact, and therefore, as previously
noted, we view the evidence in the light most favorable to the trial court's
ruling.  State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000).