COURT OF APPEALS

















COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

ELISEO LOPEZ,                                                  )

                                                                              )              
No.  08-05-00283-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )         
384th Impact District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20040D04422)

                                                                              )

 

O
P I N I O N

 

Appellant was
indicted for the offense of possession with intent to deliver cocaine, having
an aggregate weight of 400 grams or more. 
On April 18, 2005, the trial court conducted a hearing on Appellant=s motion to suppress and denied the
motion.  On June 9, 2005, Appellant
pleaded guilty to a lesser included offense. 
The trial court sentenced Appellant to 10 years imprisonment in the
Institutional Division of the Texas Department of Criminal Justice.  In this appeal, Appellant contends the trial
court erred in denying his motion to suppress because the State failed to prove
by clear and convincing evidence that his consent to search was given freely
and voluntarily; and further, any consent was withdrawn by him prior to the
discovery of the contraband.  We affirm.













On August 23,
2004, Detective Barry Alvarez was assigned to the Interdiction Unit of the El
Paso Police Department, specifically, the GRAB unit, a special unit which
searches for narcotics or currency involving narcotics and covers the ground,
railroad, airport, and parcel services. 
On that day, the detective was surveilling the main lobby area of the
Greyhound bus station on W. San
 Antonio street
. 
Detective Alvarez noticed Appellant walking through the terminal with
very little luggage, carrying only a blue backpack.  After a boarding announcement, Detective
Alvarez watched Appellant walk quickly toward a bus having destinations in New
Mexico, Texas, and Oklahoma and saw that Appellant was the first person in line
to board.   Then the detective saw
Appellant board the bus, and the detective and his partner Detective Ruben
Cardenas followed behind the Appellant onboard. 
Appellant walked to the back of the bus and made a telephone call on a
cell phone.  Detective Alvarez also
testified that the bus destinations were significant to him because they had made
several narcotics seizures on that bus line in the past, as it leaves El Paso, a Asource city,@
and travels northbound to larger cities that are usually Ademand@
cities.  The detectives were dressed in
plainclothes, wearing t-shirts and jeans. 
Both detectives were armed. 
Appellant took a seat in the last row next to the window, just in front
of the restroom, on the left side of the bus. 
Detective Alvarez was standing behind Appellant=s
row, right next to the restroom.  The two
officers approached Appellant and Detective Alvarez identified himself and
Detective Cardenas as police officers. 
Detective Alvarez displayed his badge and police I.D. and explained that
their duties at the bus station were to search for contraband, including drugs
and weapons.  Detective Alvarez asked
Appellant if they could see his bus ticket and I.D. and Appellant said, Asure.@  As he gave this information, Appellant began
to explain why his ticket and I.D. were in different names, stating that his
middle name was on the ticket and not his first name.  Detective Alvarez noticed several other Aindicators@
of a narcotics courier that they had seen in past narcotics cases, including
that the ticket was bought that morning, was paid for in cash, and was a
one-way ticket to Hobbs, New Mexico. 
Detective Alvarez also identified the following facts as
indicators:  Appellant was carrying
little or no luggage at all; Appellant was Ascanning@ the area; and Appellant was in a hurry
to board the bus, being the first passenger in line to board.

Detective Alvarez
stated that the tone of conversation with Appellant was friendly and
casual.  After he returned Appellant=s ticket to him, Detective Alvarez
asked Appellant how long he had been in El
 Paso and the purpose of his visit.  Appellant said that he had been in El Paso three days visiting family in Socorro and in the Lower Valley.  Appellant did not remember the name of the
street he was visiting, but mentioned businesses in the area which were
familiar to Detective Alvarez.  After
those questions, Detective Alvarez asked Appellant for consent to search his
luggage and Appellant said, Asure.@ 
Detective Cardenas
searched Appellant=s
backpack and found nothing.  Detective
Alvarez asked Appellant if they could search his person and Appellant said, Ayeah@
or Asure.@  Appellant was sitting while Detective Alvarez
conducted the search.  Detective Alvarez
proceeded to search Appellant=s
legs and his front abdomen, which Achecked
clear.@  The detective then asked Appellant to lean
forward, but Appellant did not respond. 
After a second request, Appellant asked him Awhat
for.@  Detective Alvarez did not reply to Appellant=s question, but instead asked Appellant
for a third time if he could lean forward. 
Appellant then leaned forward and Detective Cardenas, who was standing
behind Appellant began patting and searching Appellant=s
lower back area and located a bundle underneath Appellant=s clothing.  The bundle appeared to be narcotics based on
the way it was packaged in black electrical tape and the way it was hidden
underneath Appellant=s
clothing with a body wrap.  The bundle
later tested positive for cocaine and weighed 1.3 pounds.








On
cross-examination, Detective Alvarez testified that about five minutes elapsed
from the time they started talking to Appellant to the time Detective Cardenas
found the cocaine.  Detective Alvarez
admitted that he was aware that Appellant lived in Hobbs and that it was not unusual that he had
a bus ticket to go home.  According to
Detective Alvarez, Appellant had the indicators of a narcotics courier
because:  he paid cash for his ticket;
was leaving El Paso, a source city for drugs,
and was going to Hobbs,
a demand city; and had used his middle name instead of his first name on his
ticket.  Detective Alvarez conceded that
they did not advise Appellant that he had a right not to consent.  Even though their task force has a written consent
form, departmental policy does not require its use, but rather leaves it to the
investigator=s
discretion.

At the suppression
hearing, Appellant testified that he did not feel free to decline to do what
the officers asked him to do and thought that the officers were not going to
leave him alone if he did not do as they asked. 
Appellant agreed that he gave them consent to search his bag, but denied
giving them permission to search his person. 
According to Appellant, the first time the officer asked him to lean
forward, he did not respond.  The officer
then asked him again a little bit louder and Appellant asked him Awhat for.@  The third time the officer told him to lean
forward, Appellant still did nothing. 
The officer then reached over and pushed Appellant=s shoulder forward.  When Appellant was moved forward by the
officer, they then saw what he had and reached and grabbed it.








On
cross-examination, Appellant stated that his I.D. shows his name as Eliseo H.
Lopez and that his full middle name, Hugo, does not appear on it.  He admitted that he bought the ticket that
morning with cash.  He denied that he
walked quickly to the bus, stating that he was already by the door before the
boarding announcement.  Appellant stated
that he received a phone call just prior to boarding the bus.  Appellant testified that he told Detective
Alvarez that he did not have consent to search his person.  The detective, however, started patting him
down between his legs and did not stop when Appellant objected.  Appellant denied that he voluntarily leaned
forward; rather, Detective Alvarez put his hands on Appellant=s shoulder and gave him a little tug
forward.  Appellant admitted that he
could have stood up and taken off, but he did not and he agreed that Detective
Cardenas was not blocking the aisle. 
However, he knew that if he did not comply, they probably would have
done something to him and he did not want to suffer any bodily harm.

In his first
issue, Appellant contends that the State failed to prove by clear and
convincing evidence that any consent to the search of his person was given
freely and voluntarily.  Specifically, he
asserts that anything he had said that led the officers to believe that he
consented to the search was not voluntary, but rather was coerced by an
intimidating, close quarters interrogation by two armed officers and was in
response to their apparent authority over him.  
And in a related way, he argues in his second issue that any consent
given, was later withdrawn.

Standard
of Review








We review the
trial court=s ruling
on a motion to suppress for an abuse of discretion.  Guzman v. State, 955 S.W.2d 85, 88‑9
(Tex.Crim.App. 1997).  Under this
standard, we give almost total deference to the trial court=s determination of historical facts
supported by the record, especially when the findings are based on an
evaluation of credibility and demeanor.  Id. at 89.  We review de novo mixed questions of
law and fact that do not turn on an evaluation of credibility and
demeanor.  Id.; Balentine v. State, 71
S.W.3d 763, 768 (Tex.Crim.App. 2002). When the trial court does not make
explicit findings of fact, we review the evidence in a light most favorable to
the trial court=s
ruling.  Carmouche v. State, 10
S.W.3d 323, 327‑28 (Tex.Crim.App. 2000). 
The trial court=s
ruling will be upheld if it is reasonably supported by the record and is
correct on any theory of law applicable to the case.  State v. Ross, 32 S.W.3d 853, 855‑56
(Tex.Crim.App. 2000).

The
Encounter

The Fourth
Amendment and Article I, '
9 protect persons from unreasonable searches and seizures. See U.S. Const. amend. IV; Tex. Const. art. I, ' 9. 
However, not every encounter between an individual and a police officer
triggers these constitutional protections. 
Florida v. Bostick, 501 U.S. 429, 434,
111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); Hunter v. State, 955  S.W.2d 102, 104 (Tex.Crim.App. 1997).  During an encounter, a law enforcement
officer may approach a person and engage in conversation and such interaction
remains consensual, and thus, not an investigative detention or an arrest, so
long as the officer does not convey a message that compliance with his or her
request is required.  See Bostick,
501 U.S.
at 435, 111 S.Ct at 2386; Hunter, 955 S.W.2d at 103; see also Johnson
v. State, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995).  The dispositive question is whether, under
the totality of the circumstances, the detectives=
conduct would have communicated to a reasonable person that he was not free to
decline the detectives=
requests or otherwise terminate the encounter. 
See Hunter, 955 S.W.2d at 104; see also State v. Velasquez,
994 S.W.2d 676, 679 (Tex.Crim.App. 1999).








Appellant asserts
that the encounter between him and the police detectives was not a consensual
encounter because he did not feel free to decline to do what the detectives
told him to do in the close confines of the bus.  Appellant argues that under the totality of
the circumstances, a reasonable person would have believed that he was not free
to leave the bus and would have yielded to the detectives= cumulative show of authority.








Appellant argues
that unlike Hunter v. State, the facts in this case show that the State
failed to prove that his encounter with the detectives was consensual.  In Hunter, two plainclothes officers,
not displaying weapons, approached Hunter at a bus station as he waited to
board a bus.  Hunter, 955 S.W.2d
at 103.  After identifying themselves as
officers, one officer asked Hunter about where he was traveling and then asked
if he could see Hunter=s
bus ticket; the other officer stood several feet away, but within hearing
range.  Id. 
Hunter gave the officer his ticket, which the officer examined and then
returned.  Id. 
The officer asked Hunter for his identification, which Hunter did not
have.  Id. 
The officer then asked Hunter if he was carrying any narcotics and
Hunter replied that he was not.  Hunter,
955 S.W.2d at 103.  The officer then
informed Hunter that he was conducting a narcotics investigation and asked for
permission to search his bag, informing him that he did not have to consent to
the search.  Id. 
The officer testified that Hunter agreed to the search, which resulted
in the discovery of cocaine.  Id.  The Court held that under the totality of the
circumstances, the exchange was a consensual encounter because:  the officers were dressed in plainclothes and
their weapons were concealed; only one officer questioned Hunter, while the
other stood several feet away; the officer did not retain Hunter=s bus ticket; neither officer stated a
belief that Hunter was carrying drugs; Hunter was specifically told that he did
not have to consent to a search; and the officer did not suggest that he would
get a warrant if Hunter refused to give his consent.  Id.
at 104.  The Hunter Court concluded that no
detention had occurred because under those facts, Aa
reasonable person would have felt free to walk away from [the officer] at any
time during the encounter, prior to the search of the bag.@ 
Hunter, 955 S.W.2d at 104.

In this case,
Appellant argues that the facts are substantially different from Hunter
because the encounter involved two officers who were positioned very close to
Appellant; it occurred inside the bus, which is a more coercive environment
than a bus station because it is a close quarters situation; the detectives did
not inform Appellant that he had the right not to consent; the detectives had
written consent forms, but chose not to use them; and the detectives= weapons were undoubtedly apparent
because it would be virtually impossible to conceal a weapon under a t-shirt.








The evidence shows
that although Appellant was approached by two detectives, they were in
plainclothes, only one detective questioned Appellant and did so in a friendly
conversational manner, neither detective blocked Appellant into his seat or his
way out of the aisle, and no weapons were displayed.  Like in Hunter, Detective Alvarez
asked to see Appellant=s
bus ticket, but returned it to him. 
Further, there is no evidence that the detectives in anyway suggested
that if Appellant did not give his consent, they would get a search warrant.  See Hunter, 955 S.W.2d at
104.  While the detectives did not affirmatively
tell Appellant that he did not have to consent to the search, failure to inform
an individual that he can refuse consent does not automatically render the
consent involuntary; rather, failure to so advise is only one factor in
determining whether the encounter constitutes a seizure.  See Velasquez, 994 S.W.2d at 679; Johnson
v. State, 68 S.W.3d 644, 653 (Tex.Crim.App. 2002).  Likewise, the location of the encounter, in
this case within the confines of the bus, is one factor, but not the only one.  Bostick, 501 U.S. at 436,
111 S.Ct. at 2387.  As the Supreme Court
noted in Bostick, the inquiry is whether under the circumstances, a
reasonable person would feel free to decline the officer=s
requests or otherwise terminate the encounter, that is, whether the officer=s conduct was coercive.  Bostick, 501 U.S. at 436,
111 S.Ct. At 2387; see also Velasquez, 994 S.W.2d at 679 (test is not
whether a timid person would feel free to terminate the interview, but instead
it applies a Areasonable
person@
standard).  We conclude that the facts
show the detectives did not convey a message that Appellant=s compliance with their requests was
required and that under the totality of the circumstances, a reasonable person
would have felt free to terminate the encounter.  See Hunter, 955 S.W.2d at 104.  Thus, Appellant=s
encounter with the detectives was consensual and not a detention.

Consent
to Search

With regard to
Appellant=s consent
to the search of his person, the Texas Constitution requires the State to prove
by clear and convincing evidence that Appellant=s
consent was voluntarily given.  Carmouche,
10 S.W.3d at 331; State v. Ibarra, 953 S.W.2d 242, 243 (Tex.Crim.App.
1997).  The validity of an alleged
consent to search is a question of fact to be determined from all the
circumstances.  See Carmouche, 10
S.W.3d at 331; Allridge v. State, 850 S.W.2d 471, 493 (Tex.Crim.App.
1991).








At the suppression
hearing, Appellant denied that he gave the detectives consent to search his
person.  Appellant stated that when he
did not lean forward as Detective Alvarez requested, the detective reached over
and when the detective saw what he had, the detective reached and grabbed it.  According to Detective Alvarez, however, when
he asked Appellant for consent to search his person, Appellant said, Ayeah@
or Asure.@  Detective Alvarez then patted down Appellant=s legs and abdomen, which Achecked clear.@  The detective then asked Appellant to lean
forward to search his back area.  After a
second request, Appellant asked Awhat
for@ to which Detective Alvarez did not
reply.  According to Detective Alvarez,
Appellant leaned forward after a third request and the detective continued the
search, which led to the discovery of the bundle of cocaine concealed
underneath Appellant=s
clothing at his back.

Appellant asserts
that Detective Alvarez=s
persistent questioning, the close quarters environment with armed officers, and
the equivocal response following the third request to lean forward, show that
any consent he gave was not freely and voluntarily given.  However, from the evidence presented at the
hearing, the trial court, as the sole fact finder, could have reasonably
determined that Appellant gave his consent to the search by stating Ayeah@
or Asure@
and although he later hesitated when the detective proceeded to search his
back, Appellant nevertheless leaned forwarded and permitted the search to
continue.  Applying appropriate deference
under our standard of review, we conclude that Appellant=s
consent to the search of his person was voluntarily given.  Further, despite Appellant=s contention that his lack of verbal
response to Detective Alvarez=s
requests during the search should have been interpreted as a withdrawal of
consent, or as a Ano,@ the trial court could have reasonably
found that his physical movement demonstrated no such withdrawal occurred.  Because Appellant voluntarily gave his
consent to the search of his person after a consensual encounter with the
detectives and such consent was never withdrawn, we conclude that the trial
court did not err by denying Appellant=s
motion to suppress.  Issues One and Two
are overruled.

We affirm the
trial court=s
judgment.

 

August
17, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)