In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-285 CR


NO. 09-06-286 CR


____________________



THE STATE OF TEXAS, Appellant



V.



CANDELARIO GARCIA-CANTU, Appellee






On Appeal from the County Court at Law No. 3


Montgomery County, Texas


Trial Cause Nos. 06-213469 and 06-213471







OPINION 

 The State appeals from the trial court's grant of Candelario Garcia-Cantu's motions
to suppress. (1) In a single point of error, the State contends that the trial court erred by
requiring the State to show that the police had reasonable suspicion before they approached 
Garcia-Cantu's parked vehicle. We agree and reverse the trial court's order granting the
motions to suppress.

 Garcia-Cantu was charged by complaint and information with marihuana possession
(Cause No. 06-213469) and unlawfully carrying a weapon (Cause No. 06-213471). Garcia-Cantu filed a motion to suppress in both causes. After a hearing on April 19, 2006, the trial
court granted Garcia-Cantu's motions to suppress. The State filed its notices of appeal on
May 4, 2006. 

 Around 4:00 a.m. on December 26, 2005, Officer Wade Okland of the Conroe Police
Department was conducting a routine patrol of the 300 block of South Pacific. He saw an
unfamiliar truck parked at the dead-end of the street. After checking the truck's registration,
Okland determined that the address of the registered owner of the truck did not match the
address on South Pacific where the truck was parked. Okland then saw two people moving
inside the truck and noticed that the interior light was on. Okland directed his spotlight at
the truck, initiated his patrol car's camera, and pulled up behind the truck. As Okland
approached the truck, Garcia-Cantu and his passenger got out of the truck. Okland did not
turn on his emergency overhead lights, draw his weapon, or order the occupants to exit the
truck. 


 After Okland began talking with Garcia-Cantu, a second Conroe Police Department
officer, Raymond McCreary, arrived at the scene. McCreary arrived in response to Okland's
report of the suspicious parked truck. McCreary stated at the trial that Okland did not
activate his emergency overhead lights and that Okland did not draw his weapon. 

 Both Okland and McCreary testified that the truck was parked in an area known for
drug trafficking and prostitution. When requested by the trial court, the State presented no
statistical data to further support this testimony.

 Garcia-Cantu also testified at the suppression hearing. He stated that Okland's
spotlight was on, but agreed that Okland's emergency lights were not. Garcia-Cantu also
agreed that he voluntarily exited his truck. Additionally, Garcia-Cantu testified that Okland
did not draw a weapon or shout at him while approaching his truck. Nonetheless, Garcia-Cantu contended that because of the spotlight, he felt that he was not able to leave the scene. 
 The trial court did not file findings of fact and conclusions of law. However, the
transcript of the hearing reveals that the trial court based its decision on Okland's inability
to articulate a reasonable suspicion of criminal activity to justify approaching Garcia-Cantu's
parked truck. For example, during the suppression hearing, the trial court questioned Okland
as follow:

 THE COURT: Were they doing anything that appeared to
be of a criminal nature? Like, were they
smoking anything? Drinking anything? 
Shooting any weapon? Doing anything like
that? 


 [Officer Okland]: From what I could see with my spotlight
on, all I saw was a person sitting in the
driver[']s side, making movements over
towards his passenger in the back seat
area, which made me suspicious.

 

 THE COURT: What reason do you have to come up to the
vehicle, other than it was night time, and
you've learned, been told, that this is a
high crime area?

 

 [Officer Okland]: That's it. I wanted to see what they were
doing.

 

 THE COURT: You wanted to see what they were doing. 
And at the time that you were observing
them, did you see them do anything that
was a criminal activity?


 [Officer Okland]: No sir.


 THE COURT: . . . What was the suspected criminal
activity that the driver and the passenger
were suspected of when you approached?


 [Officer Okland]: Drugs, narcotics. And the area of the
house they were in front of.


Moreover, it also appears from the transcript, that the trial court determined that Garcia-Cantu was detained based on Garcia-Cantu's contention that he felt he could not leave
because of the spotlight. Taken as a whole, the record reveals the trial court required that
Okland articulate a reasonable suspicion of criminal activity to justify his approach to Garcia-Cantu's truck and that Okland's use of the spotlight was sufficient to amount to a detention.

 Generally, we review a trial court's ruling on a motion to suppress for abuse of
discretion. Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We give almost total
deference to the trial court's rulings on questions of historical fact and on its application of
law to fact questions when these rulings "are based on an evaluation of credibility and
demeanor." Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (citing Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). But when the trial court's rulings do
not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's
rulings on mixed questions of law and fact. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.
Crim. App. 2002). We do not engage in our own factual review; the trial judge is the sole
trier of fact and judge of the credibility and weight to be given to a witness's testimony. See
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990). When the trial court does not file findings of fact, "we view
the evidence in the light most favorable to the trial court's ruling and assume that the trial
court made implicit findings of fact that support its ruling as long as those findings are
supported by the record." Ross, 32 S.W.3d at 855 (citing Carmouche v. State, 10 S.W.3d
323, 328 (Tex. Crim. App. 2000)). (2) We will uphold the trial court's decision if it is correct
on any theory of law applicable to the case. Ross, 32 S.W.3d at 856 (citing Romero v. State,
800 S.W.2d at 543).

 Both federal and state law provide that a police officer may approach a citizen in a
public place or knock on a door to ask questions or seek consent to search. Florida v.
Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); State v. Perez, 85
S.W.3d 817, 819 (Tex. Crim. App. 2002); Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim.
App. 1997). The officer need not have reasonable suspicion to do so as long as the officer
does not indicate that compliance is required. Hunter, 955 S.W.2d at 104; see also State v.
Carranza, 162 S.W.3d 407, 409 (Tex. App.-Beaumont 2005, pet. ref'd) (officer not required
to have reasonable suspicion to knock on a hotel room door); State v. Bryant, 161 S.W.3d
758, 762 (Tex. App.-Fort Worth 2005, no pet.) (officer not required to have reasonable
suspicion that defendant was engaged in criminal activity to approach defendant's parked car
and knock on window). Such an encounter is a consensual interaction, which the citizen is
free to terminate at any time. See Hunter, 955 S.W.2d at 104. Therefore, an encounter is not
considered a "seizure" for Fourth Amendment purposes and does not warrant constitutional
analysis. See id. The material facts regarding Okland's approach to Garcia-Cantu's truck
are not disputed. Because Garcia-Cantu parked on a public street, the law allows Okland to
approach him without requiring any proof of reasonable suspicion to do so. 

 Furthermore, in evaluating a similar argument over whether the police could spotlight
and then approach a parked van at night in a residential neighborhood, the Texas Court of
Criminal Appeals stated that the "mere approach of the police officer to the [vehicle]
interfered with no one's freedom of movement and caused minimal inconvenience and loss
of time." Stewart v. State, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980) (holding no
unconstitutional search and seizure occurred). Another court for similar reasons rejected the
claim that the use of a spotlight transformed an encounter into a detention. In State v. Baker,
107 P.3d 1214 (Idaho 2004), the Idaho Supreme Court stated:

 Spotlights have the purpose of illuminating an area, enabling the
officer to gain more information about the nature of the vehicle,
its occupants, and the circumstances that the officer is
confronting. The spotlight can significantly enhance officer
safety. We agree with the State that an officer is not
constitutionally required to choose between a consensual
encounter in the dark or turning on a spotlight and thereby
effectuating a detention that may not be supported by reasonable
suspicion. A rule that an officer's use of a spotlight creates a
per se detention would discourage officers from using such
lights when necessary for their safety or the safety of others.


Id. at 1218 (quoting State v. Baker,2004 Ida. App. LEXIS 20, at *7-8 (Idaho App. 2004)). 


 The record before us reflects the facts that occurred from the time Okland pulled
behind Garcia-Cantu's parked truck until he voluntarily got out of it to talk to Okland. At
that stage, all that is shown is an encounter, not a detention. We find the trial court abused
its discretion in requiring Okland to articulate a reasonable suspicion before approaching
Garcia-Cantu's parked truck. We also find the trial court abused its discretion in determining
under these circumstances that spotlighting Garcia-Cantu's truck resulted in Garcia-Cantu's
detention. The State's sole issue is sustained.

 Having sustained the State's sole issue, we reverse the trial court's order granting
Garcia-Cantu's motions to suppress and remand the causes to the trial court for further
proceedings consistent with this opinion.

 REVERSED AND REMANDED. 


 

 ____________________________

 HOLLIS HORTON

 Justice

 

Submitted on April 12, 2007

Opinion Delivered May 23, 2007

Publish


Before Gaultney, Kreger, and Horton, JJ.
1. Appellee's name appears in the record at various places as either Candelario Cantu-Garcia or as Candelario Garcia-Cantu; we will refer to Appellee as Garcia-Cantu. In
addition, Garcia-Cantu was charged with two offenses that arise from one incident and each
was assigned a separate cause number. He filed a motion to suppress in each cause number,
and the trial court held a single suppression hearing on both motions. We address both
appeals together. 
2. The State did not request that the trial court make findings of fact and conclusions
of law.