In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00181-CR


______________________________




ERIC DEWAYNE MATHIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 35513-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Eric Dewayne Mathis appeals his conviction for possession of a controlled substance,
alleging his detention and search were improper and therefore the trial court erred in denying his
motion to suppress the evidence. We affirm the judgment of the trial court. 

I. Factual and Procedural Background

 While responding to a report of a disturbance with several other officers, Officer Kirk Rhodes
observed a green Honda that appeared to be driven at an unsafe speed in a residential area. Rhodes 
signaled with his hands and his flashlight for the driver to slow down. Either interpreting Rhodes'
signals as a request to stop or for some other reason, the driver stopped the vehicle on the side of the
road. When Rhodes approached the vehicle, he detected the distinctive odor of marihuana. Rhodes
requested the driver, Mathis, to exit the vehicle, ordering him to "keep his hands up where [Rhodes]
could see them." As Mathis exited the vehicle, he reached "for the front of his pants or around his
pockets." Believing Mathis might have a weapon or was attempting to conceal something, Rhodes
conducted a search of Mathis. During the search, another officer observed Mathis drop something. 
A bag containing cocaine was discovered near Mathis' feet. After the trial court denied Mathis'
motion to suppress, Mathis pled guilty to possession of a controlled substance and signed a
stipulation of the evidence. The trial court found Mathis guilty and sentenced him to seven years'
imprisonment. 


II. Reasonableness of the Detention 

 Mathis' first argument is that the stop was unreasonable. According to Mathis, Officer
Rhodes lacked probable cause or reasonable suspicion to detain Mathis because there was no
"objective basis" for the officer's conclusion that Mathis was speeding. Mathis argues there is no
evidence Rhodes clocked Mathis' speed with a radar gun and the State failed to introduce any
evidence that Rhodes had specialized training that would allow him to evaluate the speed of a
vehicle without the use of radar. The State responds that the stop was a consensual encounter or, in
the alternative, Rhodes had specific, articulable facts to justify the detention. 

 A. Standard of Review 

 We review the trial court's decision on a motion to suppress evidence by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts that
depend on credibility, but review de novo the trial court's application of the law. Wiede v. State, 214
S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of
law that finds support in the record." Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App.
2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review
de novo determinations of probable cause or reasonable suspicion after granting deference to the trial
court's determination of historical facts. Guzman, 955 S.W.2d at 87.

 The defendant alleging a Fourth Amendment violation bears the burden of producing some
evidence that rebuts the presumption of proper police conduct. Amador v. State, 221 S.W.3d 666,
672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a
search or seizure occurred without a warrant." Id. The burden then shifts to the State to prove that
the search or seizure was nonetheless reasonable under the totality of the circumstances. Id. at
672-73. 

 The first step in our analysis is to determine the nature of the interaction between Officer
Rhodes and Mathis. "[N]ot all seizures of the person must be justified by probable cause to arrest
for a crime." Florida v. Royer, 460 U.S. 491, 498 (1983). The parties do not agree concerning how
we should characterize the interaction. Mathis argues the interaction was an arrest or, alternatively,
a temporary detention. The State argues the interaction was an encounter or, alternatively, a
temporary detention.

 B. Detention Was Not an Arrest

 Mathis impliedly argues the interaction was an arrest. (1) An individual is arrested when he or
she has been actually placed under restraint or taken into custody. Tex. Code Crim. Proc. Ann. art.
15.22 (Vernon 2005). "A person is in 'custody' only if, under the circumstances, a reasonable person
would believe that his freedom of movement was restrained to the degree associated with a formal
arrest." Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). At least four general
situations may constitute custody: 1) the suspect is physically deprived of his or her freedom of
action in any significant way, 2) a law enforcement officer tells the suspect that he or she cannot
leave, 3) law enforcement officers create a situation that would lead a reasonable person to believe
that his or her freedom of movement has been significantly restricted, and 4) there is probable cause
to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. Id. at
255. At the time of the stop, Mathis had not been physically restrained and had not been told he was
under arrest. The record does not support a conclusion that, under the circumstances, a reasonable
person would believe that his or her freedom of movement was restrained to the degree associated
with a formal arrest. There is no evidence the officer's knowledge of probable cause was manifested
to the suspect. The stop was not an arrest.

 C. An Encounter

 The State claims the interaction was an encounter which does not require reasonable
suspicion. Not every interaction between police and citizens implicates the Fourth Amendment. The
law authorizes a police officer to stop and ask questions of a citizen. These encounters are
consensual as long as the person would feel free to go about his or her business. Hunter v. State, 955
S.W.2d 102, 104 (Tex. Crim. App. 1997); see Florida v. Bostick, 501 U.S. 429, 434 (1991);
California v. Hodari D., 499 U.S. 621 (1991). Even when officers have no basis to suspect an
individual, they may ask questions of that individual, ask to examine that person's identification, and
request to search such person's luggage, so long as the police do not by their actions actually inform
the person that compliance with their requests is required. Bostick, 501 U.S. at 434-35; Hunter, 955
S.W.2d at 104.

 A seizure of the person occurs when the officer, by means of physical force or show of
authority, has in some way restrained the liberty of a citizen. Bostick, 501 U.S. at 434. Rhodes
testified he did not intend for his signal to be interpreted as a command to stop and, when the car
stopped, he believed the driver "wanted to speak to [him]." The State argues Mathis could have
rolled up his window and continued driving. Rhodes testified he signaled with his hands and his
flashlight for the car to slow down. While conceding it was possible a person would interpret the
signal as an indication he wanted the individual to stop, Rhodes claimed the signal was a common
signal meaning to slow down. Rhodes agreed a "conscientious person who wants to be sure he
doesn't disobey an order" might interpret his signals as a command to stop. Even if the initial police
intervention is considered an investigative detention, we believe such a detention was proper.

 D. Terry Detention 

 We believe the interaction is best characterized as an investigative detention. "A routine
traffic stop resembles an investigative detention." State v. Cardenas, 36 S.W.3d 243, 246 (Tex.
App.--Houston [1st Dist.] 2001, pet. ref'd). The United States Supreme Court in Terry v. Ohio
established the test for investigative detentions. Terry established a two-pronged test for
investigative detentions. Terry v. Ohio, 392 U.S. 1, 19-20 (1968). To determine the reasonableness
of an investigative detention, the  court  must  inquire:  "(1)  whether  the  officer's  action  was
 justified  at  its  inception;  and, (2) whether it was reasonably related in scope to the circumstances
which justified the interference in the first place." Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim.
App. 1997); see Terry, 392 U.S. at 19-20. 

 "Under the first prong, 'the police officer must be able to point to specific and articulable
facts which, taken together with rational inferences from those facts, reasonably warrant that
intrusion.'" Davis, 947 S.W.2d at 242 (quoting Terry, 392 U.S. at 21). The specific, articulable
facts, along with rational inferences from those facts, must allow the officer to reasonably conclude
the person detained actually is, has been, or soon will be engaged in criminal activity. United States
v. Sokolow, 490 U.S. 1, 10 (1989). The second prong of Terry requires the scope of the detention
to be "like any other search, . . . strictly circumscribed by the exigencies which justify its initiation." 
Davis, 947 S.W.2d at 243 (quoting Terry, 392 U.S. at 25). The officer must diligently pursue a
means of investigation that lasts no longer than is necessary and should be the "least intrusive means
reasonably available." Id. at 245. Mathis only challenges the first prong of the test.

 A law enforcement officer may lawfully stop and detain a person for a traffic violation
committed in the presence of the officer. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App.
1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.--Texarkana 2000, pet. ref'd). "The offense
of speeding requires, in general, proof that the vehicle's speed was not reasonable and prudent." 
Tollett v. State, 219 S.W.3d 593, 598 (Tex. App.--Texarkana 2007, pet. ref'd). Section 545.351 of
the Texas Transportation Code provides: "[a]n operator may not drive at a speed greater than is
reasonable   and   prudent   under   the   circumstances   then   existing."   Tex.   Transp.   Code
Ann.  § 545.351(a), (b) (Vernon 1999). A posted speed limit is merely "prima facie evidence that
the speed is not reasonable and prudent and that the speed is unlawful." Tex. Transp. Code Ann.
§ 545.352 (Vernon Supp. 2007); see also Tex. Transp. Code Ann. §§ 545.353, 545.355, 545.356
(Vernon Supp. 2007). 

 The El Paso Court of Appeals has concluded an investigative detention for speeding may be
reasonable  even  in  the  absence  of  a  measurement  of  the  speed  by  radar.  Heredia  v.  State,
No. 08-06-00011-CR, 2007 Tex. App. LEXIS 4638 (Tex. App.--El Paso June 14, 2007, no pet.)
(mem. op., not designated for publication) (estimated speed with police car's speedometer). 
Although Rhodes did not use the words "reasonable and prudent," a reasonable deduction from his
testimony would be that the speed was not reasonable or prudent. Rhodes testified the car "appeared
to be traveling above the speed limit" and the speed "presented a danger" to several police officers
and juveniles near the road. 

 Even though there is no evidence Mathis' speed was measured with radar, Rhodes had
reasonable suspicion that Mathis' speed was not reasonable and prudent. The trial court did not err
in determining the original detention of Mathis' vehicle for the traffic offense of speeding was
reasonable. 

III. Probable Cause to Search

 Mathis also argues the evidence should have been suppressed because Rhodes lacked
probable cause to search Mathis. We note that the cocaine was found by Mathis' feet. As such, the
cocaine may have been abandoned. There is no seizure under the Fourth Amendment if the
defendant "intended to abandon the property and his decision to abandon it was not due to police
misconduct." McDuff v. State, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997). Mathis appears to
argue that the abandonment of the substance was occasioned by the search. We will assume, without
deciding, that whether the officer had probable cause to search Mathis' person is relevant to whether
there was a seizure under the Fourth Amendment. Because the facts are not developed sufficiently,
we will also assume the search did not constitute a pat-down search. (2)

 In determining probable cause, we must consider the totality of the circumstances. Angulo
v. State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable cause requires more than
mere suspicion, it requires far less evidence than is needed to support a conviction or even a finding
by a preponderance of the evidence. Middleton v. State, 125 S.W.3d 450, 459 (Tex. Crim. App.
2003). Probable cause exists where officers have reasonably trustworthy information sufficient to
warrant a reasonable belief that an offense has been or is being committed. McGee v. State, 105
S.W.3d 609, 614 (Tex. Crim. App. 2003); see Estrada v. State, 154 S.W.3d 604, 609 (Tex. Crim.
App. 2005).

 Mathis argues, if the odor of marihuana has any relevance to probable cause, it merely
provides probable cause to search the automobile. We have recently held the odor of marihuana is
an important factor in determining whether an officer had probable cause to search an automobile. 
See Martin v. State, No. 06-07-00104-CR, 2008 Tex. App. LEXIS 2167 (Tex. App.--Texarkana
Mar. 27, 2008, no pet.) (mem. op., not designated for publication); see also Parker v. State, 206
S.W.3d 593, 599 (Tex. Crim. App. 2006); Moulden v. State, 576 S.W.2d 817, 819-20 (Tex. Crim.
App. [Panel Op.] 1978). However, the odor, under the facts of this case, is also an important factor
in determining whether the officer had probable cause to search Mathis' person. Rhodes specifically
testified that the odor of marihuana was coming from both Mathis and the car. This Court has held
the odor of marihuana, under the appropriate circumstances, can be sufficient to constitute probable
cause to search a defendant's person. See Hitchcock v. State, 118 S.W.3d 844, 851 (Tex.
App.--Texarkana 2003, pet. ref'd) (officer believed occupants of car had been smoking marihuana
based on smoke and strong odor inside car); see also Ross v. State, 486 S.W.2d 327, 328 (Tex. Crim.
App. 1972). In addition, Rhodes testified Mathis reached "for the front of his pants or around his
pockets" after being ordered to "keep his hands up where [Rhodes] could see them." Rhodes
concluded from this gesture that Mathis might have a weapon or was attempting to conceal
something. Giving due deference to the trial court's determination of historical facts, we conclude
Rhodes had probable cause, under the circumstances of this case, to search Mathis' person. The trial
court did not err in denying the motion to suppress. 


 For the reasons stated, we affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: May 14, 2008

Date Decided: May 15, 2008


Do Not Publish
1. Mathis argues "[n]o reasonable person would have felt he was free to leave in these
circumstances" and that the officer lacked probable cause to stop Mathis. Because these standards
are pertinent to arrests, we presume Mathis is arguing the original interaction was an arrest. We
note, in Texas, a police officer must promptly release a person accused of speeding from custody
if the person executes a written promise to appear in court. Tex. Transp. Code Ann. §§ 543.004,
543.005 (Vernon Supp. 2007). But see Virginia v. Moore, No. 06-1082, 2008 U.S. LEXIS 3674
(U.S. Apr. 23, 2008).
2. The State characterizes the search as a "weapons frisk" or "pat-down" search. Rhodes
testified he asked Mathis to exit the car for a "preliminary weapons frisk." Throughout the rest of
the hearing, Rhodes described the search merely as a "search." The record does not contain any
details concerning how the search was conducted or how intensive the search was. We note "[l]aw
enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even
in the absence of probable cause, where an officer reasonably believes that the suspect is armed and
dangerous." Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000). Because the State
had the burden to show the warrantless search was reasonable, we will assume--in the absence of
a sufficient record--the search exceeded the scope permitted by a "pat-down" or "frisk" search for
weapons.