

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00161-CR

_____

PAULA SOSA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2009-0198

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Paula Sosa filed a motion to suppress the evidence of her intoxication, which Texas Department of Public Safety Trooper Joe Hill discovered when he interacted with her late one night as she was parked at the entrance to some Marshall self-storage units.[1] In the hearing on Sosa's suppression motion, the parties focused on the issue of whether Hill had reasonable suspicion to justify what the parties reasonably assumed was an investigative detention. After the trial court denied Sosa's requested suppression of the evidence, Sosa pled guilty to driving while intoxicated.[2] She now appeals, urging, as her lone appellate issue, that the evidence should have been suppressed.[3] Because Hill had insufficient articulable facts to establish reasonable suspicion to support the investigative detention, we sustain Sosa's point of error, reversing and remanding to the trial court for further proceedings consistent with this opinion.

A trial court's decision on a motion to suppress evidence is reviewed by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. *Burke v.*

---

[1] While on patrol, Hill observed Sosa parked at the entrance to DC Self Storage in Marshall, Texas, at approximately 10:45 p.m. Based on Hill's experience when Hill's mother had previously rented a unit from that storage facility, Hill believed the normal business hours of the storage facility were from 7:00 a.m. to 7:00 p.m. Hill proceeded past the storage facility and stopped on the side of the road. When Sosa did not enter after thirty to forty seconds, Hill turned around, activated his lights, and pulled in "behind her." While conversing with Sosa, Hill detected the odor of alcohol on Sosa's breath and noticed that Sosa's speech was slurred. Subsequent investigation determined Sosa to be intoxicated.

[2] The trial court sentenced Sosa to 180 days in county jail and a $2,000.00 fine, suspended the sentence, and placed Sosa on twelve months' community supervision.

[3] The State provided this Court with a letter affirmatively declining to file a brief in this case.

2

*State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). The appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 985 S.W.2d 85, 89 (Tex. Crim. App. 1997). The court also affords such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89. The appellate court, though, reviews de novo those questions not turning on credibility and demeanor. *Id.*

The parties in this case presumed in the trial court that the initial interaction between Hill and Sosa was an investigative detention.[4] Neither party argued to the trial court that the initial interaction was an encounter.

---

[4]If the initial interaction between Sosa and Hill had been an encounter, reasonable suspicion would not have been needed to overrule Sosa's motion to suppress. The Fourth Amendment does not require any justification whatsoever on the part of an officer who merely approaches an individual in public to ask questions. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

While the traditional rule is that we should affirm if "the trial judge's decision is correct on any theory of law applicable to the case," *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990), several Texas courts have suggested the State's failure to present a theory to the trial court may prevent that theory from being "applicable to the case." *See, e.g.*, *State v. Allen*, 53 S.W.3d 731, 733 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (concluding theories not presented to trial court are not "applicable to the case"); *State v. Gonzales*, 850 S.W.2d 672, 675 (Tex. App.—San Antonio 1993, pet. ref'd) ("inappropriate for a reviewing court to determine that the suppression of evidence is supported on other grounds when the trial court did not address any other possible grounds for suppression"); *cf. Sedani v. State*, 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (concluding former Rule 52(a), the predecessor to Rule 33.1 of the Texas Rules of Appellate Procedure, applies to the appellee as well as the appellant). Although the Texas Court of Criminal Appeals has yet to adopt this interpretation, it appears to have applied it *sub silentio* in at least two cases. *See Sanbury v. State*, 88 S.W.3d 229 (Tex. Crim. App. 2002); (because trial court did not consider Rule 403 of Texas Rules of Evidence, court refused to consider it); *State v.*

*Sheppard*, 271 S.W.3d 281 (Tex. Crim. App. 2008). *But see Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (affirming on theory not argued to trial court). This Court has yet to adopt this interpretation of the general rule; yet, here, it is not necessary, as this interaction was an investigative detention.

There are three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). An encounter is a purely consensual interaction which a citizen may terminate at any time. *Saldivar v. State*, 209 S.W.3d 275, 281 (Tex. App.—Fort Worth 2006, no pet.). Encounters are consensual as long as the person would feel free to go about his or her business. *Hunter*, 955 S.W.2d at 104; *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621 (1991).

An encounter becomes a temporary detention if a "seizure" occurs. A seizure of the person occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen and the citizen has submitted to that authority. *Bostick*, 501 U.S. at 434; *Hodari D.*, 499 U.S. 621; *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Such a determination is made based on the totality of the circumstances surrounding the event. *Bostick*, 501 U.S. at 439; *Hunter*, 955 S.W.2d at 104. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person he or she was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 439; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999); *Hunter*, 955 S.W.2d at 104; *Jackson v. State*, 77 S.W.3d 921, 927 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A person "yields to an officer's display of authority" when a reasonable person would not feel free to leave the officer's presence or otherwise terminate the encounter. *Bostick*, 501 U.S. 429; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).

In this case, Hill's show of authority was sufficient to communicate to a reasonable person that he or she was not free to leave the scene. Hill testified Sosa was not free to leave. Although the classification of an interaction is determined based on an objective standard and, therefore, the police officer's subjective opinion is not determinative, Hill's subjective opinion can be evidence that a reasonable person would not feel free to terminate the interaction. *See Whren v. United States*, 517 U.S. 806 (1996) (reasonable suspicion evaluated from objective perspective). The manner in which Hill parked his vehicle and the use of overhead emergency lights suggest the interaction was an investigative detention. Since Sosa was parked in front of the storage facility's gate, the position of Hill's vehicle effectively prevented her vehicle from moving. Sosa's vehicle seems to have been trapped between the storage facility's gate and Hill's vehicle. The Texas Court of Criminal Appeals has considered the fact that a police officer "'boxed in' Appellee's parked truck" in determining whether a seizure had occurred. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 246 n.44 (Tex. Crim. App. 2008) (concluding trial court did not err in concluding reasonable person would not feel free to leave).

Although "[a]ctivation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual," the Texas Court of Criminal Appeals has noted: "The use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention or seizure of a citizen, either in a parked or moving car." *Id.* at 245 n.43 (spotlight different from overhead lights); *see Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (activation of overhead lights factor in concluding pedestrian was detained); *Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) (activation of patrol car lights and police officer's order caused appellant to yield to show of authority); *see Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (mere activation of overhead lights at dark rest park was insufficient, by itself, to make initial interaction a detention). *Franks* is distinguishable in that, there, no evidence suggested that the position of the police car impeded Franks' ability to terminate the encounter. *Franks*, 241 S.W.3d at 142. Further, the police officer in *Franks* testified he activated the overhead lights to illuminate the rest area. *Id.* There is no evidence in this case that Hill activated his

A temporary or investigative detention is a seizure. *Josey v. State*, 981 S.W.2d 831, 838 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Therefore, a certain objective level of suspicion must be shown by the officer to justify the seizure. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). The officer must show reasonable suspicion the citizen is connected to criminal activity. *Id.*

The United States Supreme Court in *Terry v. Ohio* established the test for investigative detentions. *Terry* established a two-pronged test for investigative detentions. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *see Terry*, 392 U.S. at 19–20. "Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21). These facts must be more than a mere hunch or suspicion. *Id.* at 244. Whether the officer's suspicion was reasonable is evaluated based on "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford v. State*, 158 S.W.3d 488, 492 (Tex.

---

overhead lights to illuminate the storage facility's entry area. When asked whether the area "is fairly well lit," Hill responded, "I'd say fairly. It's not as well lit as you get going on into town."

The assumption of both Sosa and the State that the interaction in this case was an investigative detention was a reasonable assumption, with which we agree.

Crim. App. 2005). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989).

Most of Hill's specific, articulable facts concern the fact that Sosa was present just outside the storage facility after its normal business hours and failed to pass through the gate in the thirty or forty seconds of observation. Hill testified that he believed,[5] based on his mother renting a unit two years before the events in question, that the normal business hours of the facility were from 7:00 a.m. to 7:00 p.m. There was also a sign on the gate providing notice that the facility was open from 7:00 a.m. to 7:00 p.m. "[T]he fact that a car is parked in close proximity to a business that is closed for the day, is not, in and of itself, suspicious; instead, it is only a factor to consider in deciding whether there is reasonable suspicion." *Klare v. State*, 76 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

In addition, the time of day is not sufficient. While the time of day can be considered, it is only one factor and is insufficient, by itself, to create reasonable suspicion. *Crain*, 315 S.W.3d at

---

[5]Dennis Hulett, the owner of the storage facility, testified some customers are provided with twenty-four-hour access codes if they are unable to access the units between 7:00 a.m. and 7:00 p.m., and there is an after hours telephone number customers can call. Sosa was not provided with a twenty-four-hour access code. Hill testified he was not aware that some customers are provided with twenty-four-hour access codes. As the trial court correctly stated, the relevant inquiry concerns the facts the officer reasonably believes are true even if the reasonable belief was incorrect. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Madden v. State*, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007) (police officers "may be mistaken about an historical fact . . . as long as that mistake was not unreasonable"); *cf. Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd) (reasonable suspicion, though, "cannot be based on a mistaken understanding" of the law); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (Reasonable suspicion cannot be "solely based on a mistaken understanding of the traffic law."). We will defer to the trial court's implicit finding that Hill reasonably believed the normal business hours were from 7:00 a.m. to 7:00 p.m.

53; *Klare*, 76 S.W.3d at 74. Because the time of day does not " prov[e] that the suspect is engaged in any sort of criminal offense," other circumstances must raise a suspicion that the particular person is engaged in illegal behavior. *Crain*, 315 S.W.3d at 53.

Even together, Sosa's presence after hours and the lateness of the hour are insufficient to create reasonable suspicion. *Klare*, 76 S.W.3d at 74 (presence outside business after hours, very late hour, and incidence of crime in area, insufficient).[6]

Behavior that is, in itself, innocent, can certainly provide the basis for a showing of reasonable suspicion. *Sokolow*, 490 U.S. at 10. "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (rejecting as-consistent-with-innocent-activity test).

The Texas Court of Criminal Appeals recently released an opinion finding reasonable suspicion in an admittedly close case involving otherwise innocent behavior. *See Derichsweiler v. State*, No. PD-0176-10, 2011 Tex. Crim. App. LEXIS 112, at *27 (Tex. Crim. App. Jan. 26, 2010). *Derichsweiler*, though, is distinguishable from this case. In *Derichsweiler,* noncriminal behavior—repeatedly stopping near and staring at other people in public parking lots—was held sufficient to allow a reasonable person to conclude "that criminal activity is afoot." *Id*. at 17. The court characterized Derichsweiler's conduct as "bizarre to say the least." *Id.* at 25. The

---

[6]Hill also testified he believed criminal activity might be occurring because "portable buildings and storage buildings get broken into and robbed a lot." Hill testified that the area did not have a high incidence of crime and that he had no knowledge of any recent reports of theft in this area. In our view, that adds little.

7

court emphasized Derichsweiler's conduct involved "the repetition of similar, apparently scrutinizing behavior" and was "persistent, if admittedly noncriminal." *Id.* at 25–27. In other words, the conduct in *Derichsweiler* involved a pattern of bizarre behavior. In this case, Sosa's behavior could not be described as bizarre and nothing suggests a pattern or repetition of unusual behavior. The noncriminal, not terribly unusual, nonrepetitive behavior observed in this case was insufficient to objectively support a belief that criminal activity was or soon would be afoot.

The specific, articulable facts relied on by Hill are insufficient to create reasonable suspicion that criminal activity was occurring. All the facts indicate is that Sosa was present in front of a business late at night, after normal business hours, and that storage buildings are occasionally broken into. Hill failed to provide, under the totality of the circumstances, sufficient specific, articulable facts to create an objective manifestation that Sosa was, or was about to be, engaged in criminal activity. Hill's suspicion amounted to nothing more than a mere hunch. Deferring to the trial court's determination of historical facts, it was error to overrule Sosa's motion to suppress.

For the reasons stated, we reverse and remand for proceedings consistent with this Court's opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 26, 2011

8

Date Decided:	February 4, 2011

Do Not Publish