

IN THE
TENTH COURT OF APPEALS

No. 10-10-00420-CR

THO TIEU,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the 19th District Court
McLennan County, Texas
Trial Court No. 2010-535-C1

MEMORANDUM OPINION

In two issues, appellant Tho Tieu argues that the trial court erred in denying her motion to suppress because the scope of the stop exceeded the limits of police power and because she did not voluntarily consent to police searching the contents of a box in her car. We will affirm.

On April 17, 2010, at around 1:30 a.m., McLennan County Sheriffs' Deputy Brent Ewing observed Tieu's car "weaving" through traffic. Deputy Ewing explained that he saw Tieu "actually cross the center line and cross the shoulder several times ... ."

Deputy Ewing began following Tieu and saw her speed up to seventy miles per hour in a sixty-five-mile-per-hour zone and then immediately slow down to forty miles per hour. Based on these observations and the time of night, Deputy Ewing suspected that Tieu was driving while intoxicated. But before Deputy Ewing initiated a stop or activated the overhead lights on his patrol car, Tieu pulled over to the side of the road. Concerned for her welfare, Deputy Ewing stopped his patrol car and approached Tieu's stopped car. Before he walked over to Tieu's car, Deputy Ewing activated the overhead lights on his patrol car so that oncoming traffic could see both vehicles parked on the side of the road. Deputy Ewing asked Tieu if she had been drinking, to which she responded, "No." Tieu apologized for failing to drive in a single lane and explained that she was sleepy. Deputy Ewing testified that Tieu did not exhibit any of the classic signs of driving while intoxicated—slurred speech, the smell of alcohol on her breath, or red and glassy eyes. While speaking with Tieu, Deputy Ewing noticed a box in the backseat. The box appeared to be opened slightly and had a "Southern Comfort" label. Deputy Ewing explained that Southern Comfort is an alcoholic-beverage company and that the box resembled those used to package and distribute multiple bottles of alcohol. He also explained that he was concerned that Tieu had open alcoholic containers in the car, which would be a violation of the law.

Deputy Ewing asked Tieu if he could look in the box to determine its contents. Tieu consented to the search, got out of her car, walked around to the passenger side, and opened the top flap of the box so that Deputy Ewing could see its contents. When he peered inside the box, Deputy Ewing saw multiple packages that had been vacuum-

sealed and contained a brown and green leafy substance. Based on his twelve years' experience in law enforcement, Deputy Ewing believed that the packages contained marihuana. Deputy Ewing testified that he had prior experience with marihuana that was packaged in the same manner as that stored in the box in Tieu's car. After observing the contents of the box, Deputy Ewing instructed Tieu to take the box out of the car for further inspection. Deputy Ewing noted that, at this point, Tieu was not free to leave. He then opened one of the packages so that he could smell and perform a field test on the substance. Based on his investigation, Deputy Ewing determined that the substance was marihuana and subsequently arrested Tieu.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the implicit fact-finding is based on an evaluation of credibility and demeanor. *Id.* When application-of-the-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Id.* We also review the trial court's application of the law de novo. *Ross v. State*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court does not enter

findings of fact, we infer the necessary factual findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports the implied fact findings. *Id.*

In a suppression hearing alleging a Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This burden may be met by establishing that a search or seizure occurred without a warrant. *Id.* After this showing is made, the burden of proof shifts to the State, at which time the State is required to establish that the search or seizure was conducted with a warrant or was reasonable. *Id.* Here, the State stipulated that the box was searched without a warrant. Thus, the State bore the burden of proving that the warrantless search of the box was reasonable.

In her first issue, Tieu asserts that the trial court erred in denying her motion to suppress because Deputy Ewing did not have probable cause to search the car or the box because she was sober and cooperative. In her second issue, Tieu contends that she did not voluntarily consent to the search of the box. The State counters that: (1) the encounter between Tieu and Deputy Ewing was consensual and did not implicate the Fourth Amendment, or alternatively, Deputy Ewing had a reasonable suspicion that Tieu was engaged in criminal activity; and (2) Tieu voluntarily consented to the warrantless search of the box.

Law enforcement officers may stop and question a citizen, and such consensual encounters require no objective justification. *Woodard v. State*, 341 S.W.3d 404, 411 (Tex.

Crim. App. 2011) (citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2383, 2386, 115 L.Ed.2d 589 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.")); *Castleberry v. State*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). Citizens may terminate consensual encounters. *Woodard*, 341 S.W.3d at 411. Even when the officer does not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to the officer's request does not cause the encounter to lose its consensual nature. *Id.* If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred. *Id.* Moreover, an officer's asking questions and requesting consent to search do not, standing alone, render an encounter a detention. *Hunter v. State*, 955 S.W.2d 102, 106 (Tex. Crim. App. 1997). Only if the officer conveyed a message that compliance was required has a consensual encounter become a detention. *Id.*

"Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction." *Woodard*, 341 S.W.3d at 411. We consider the time, place, and surrounding circumstances, but the officer's conduct is the most important factor when deciding whether an interaction was consensual. *Id.* When deciding whether a consensual encounter has become a detention, we consider several factors, including:

> (1) whether the officer was in uniform; (2) whether the officer exhibited a weapon; (3) the number of officers present; (4) whether the officer suggested that he would get a warrant if the defendant did not comply; (5)

whether the officer told the defendant he believed the defendant was carrying drugs; and (6) whether the officer told the defendant that compliance was or was not required.

*Melugin v. State*, 989 S.W.2d 470, 472 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (citing *Hunter*, 955 S.W.2d at 104). Moreover, we view the totality of the circumstances of the encounter in the light most favorable to the trial court's implicit or explicit factual findings; a piecemeal or "divide and conquer" approach is prohibited. *Garcia-Cantu*, 253 S.W.3d at 244.

In this case, Deputy Ewing approached Tieu's car only after she voluntarily pulled off to the side of the road. Initially, Deputy Ewing was the only law enforcement officer at the scene of the incident, and the record does not indicate that he exhibited a weapon. *See Melugin*, 989 S.W.2d at 472; *see also Hunter*, 955 S.W.2d at 104. Deputy Ewing did activate the overhead lights on his patrol car, but only after Tieu had already pulled over. Deputy Ewing said he activated his overhead lights so that oncoming traffic could see both vehicles parked on the side of the road. *See Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.) ("[D]epending on the facts, the officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists."); *cf. Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) ("Activation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual[,]" but "when a person stops in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred and reasonable suspicion is required."). Furthermore, Deputy Ewing noted that he positioned his patrol car behind Tieu's car.

Though she was prevented from driving in reverse because of the positioning of Deputy Ewing's patrol car, she was not impeded from driving forward. *See Garcia-Cantu*, 253 S.W.3d at 246 n.44 (stating that when officer partially blocks parked car or makes it somewhat inconvenient for citizen to depart voluntarily, such action is not alone sufficient to be a detention). In addition, the record does not suggest that Deputy Ewing conveyed a message to Tieu that she must comply with his requests, including when he asked to look inside the box. *See Hunter*, 955 S.W.2d at 104, 106. Under the totality of the circumstances, we conclude that the initial interaction between Deputy Ewing and Tieu was a consensual encounter. *See Woodard*, 341 S.W.3d at 411 (stating that "[g]enerally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual"); *see also Castleberry*, 332 S.W.3d at 468; *Hunter*, 955 S.W.2d at 106.

Tieu's chief complaint is that once Deputy Ewing determined that she was not driving while intoxicated, Deputy Ewing should not have requested permission to search the box and she should have been released. But Tieu's complaint about the scope of the encounter is premised on an assumption that the encounter between her and Deputy Ewing was a detention and not consensual—an assumption we have rejected. *See Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004) (holding that once original purpose for stop is concluded, detention must end and may not be unreasonably prolonged solely in hopes of finding evidence of some other crime); *see also Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) ("[O]nce the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated

criminal activity.'") (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996)).

In any event, while speaking with Tieu during the consensual encounter, Deputy Ewing noticed the partially opened Southern Comfort box on the back seat of Tieu's car in plain view. Deputy Ewing testified that, based on his observation of the box, he believed that Tieu may have had open alcoholic containers in her car. At this time, Deputy Ewing asked Tieu if he could look inside the box. Nothing in the record indicates that Deputy Ewing ordered Tieu to allow him the opportunity to look inside the box. Tieu granted Deputy Ewing permission to search the box. In fact, she got out of her car, opened the passenger-side door, and opened the box so that Deputy Ewing could see inside.

As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). One such exception arises when a person voluntarily consents to a search. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The validity of consent to search is a question of fact to be determined from all the circumstances. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973) (holding that test for valid consent to search requires consent to be voluntary, and voluntariness is question of fact to be determined from all the circumstances). To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied.

*Carmouche*, 10 S.W.3d at 331. The U.S. Constitution requires the State to prove the validity of the consent by a preponderance of the evidence, but the Texas Constitution requires the State to make the same showing by clear and convincing evidence. *Guevara v. State*, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003). Accordingly, we review the evidence under the more protective Texas standard. *See Ibarra v. State*, 953 S.W.2d 242, 244-45 (Tex. Crim. App. 1997).

Voluntariness of consent is determined by looking at the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000) (citing *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2041). By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court determines whether the statement of consent was given voluntarily. *Id.* In determining voluntariness, the factors considered include: (1) whether the consenting person was in custody; (2) whether the person was arrested at gunpoint; (3) whether the person had the option of refusing consent; (4) the constitutional advice given to the person; (5) the length of the detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *Id.* Courts may also consider the consenting person's age, education, and intelligence. *Id.*

Here, there is no evidence, other than Tieu's apparent sleepiness, to indicate that she did not voluntarily consent to the search. Tieu not only agreed to allow Deputy Ewing to look inside the box, she got out of her car, opened the passenger-side door, and positioned the box so that Deputy Ewing could peer inside. The consensual

encounter was brief, and there is no indication that Tieu did not have the option to deny Deputy Ewing permission to search the box. Based on the totality of the circumstances, we cannot say that Tieu consented to the search of the box as a result of duress or coercion, either express or implied.[1] *See Carmouche*, 10 S.W.3d at 331. Accordingly, we believe that the State proved by clear and convincing evidence that Tieu voluntarily consented to the search of the box.

In sum, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that: (1) the initial encounter between Deputy Ewing and Tieu was consensual and did not amount to a detention; and (2) Tieu voluntarily consented to the search of the box. Accordingly, we overrule both of Tieu's issues and affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 27, 2012
Do not publish
[CR25]

---

[1] Tieu also appears to complain that Deputy Ewing did not obtain her consent to search the vacuum-sealed bags that were inside the box. But once he recognized that the bags contained a brown and green leafy substance that, based on his twelve years of law-enforcement experience, resembled marihuana, Deputy Ewing had probable cause to perform a search of the bags to determine whether they contained marihuana. *See McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (stating that probable cause to search exists where "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found"); *see also Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000) (same). Thus, at this point, Deputy Ewing did not need consent from Tieu to search the bags. *See Hughes*, 24 S.W.3d at 838; *see also McNairy*, 835 S.W.2d at 106.